J-S16009-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.A.D.-B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 76 MDA 2022 |

Appeal from the Dispositional Order Entered July 15, 2021
In the Court of Common Pleas of Centre County
Juvenile Division at No(s):  CP-14-JV-0000005-2021

BEFORE:   PANELLA, P.J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY PANELLA, P.J.:                    **FILED JULY 29, 2022**

J.A.D.-B., a minor, appeals from the dispositional order entered following his adjudication of delinquency for one count each of burglary, robbery, criminal trespass, theft by unlawful taking, receiving stolen property, possessing an instrument of crime, possessing a weapon, terroristic threats, simple assault, recklessly endangering another person and tampering with evidence, and five counts of criminal conspiracy.[1] J.A.D.-B. challenges the evidence supporting his adjudication of delinquency, as well as his dispositional placement in a secure facility. After careful review, we affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] *See* 18 Pa.C.S.A. §§ 3502(a)(1)(i), 3701(a)(1)(iv), 3503(a)(1)(i), 3921(a), 3925(a), 907(a) and (b), 2706(a)(1), 2701(a)(3), 2705, 4910(1), 903.

During the late night to early evening hours of May 24-25, 2020, J.A.D.-B. and another juvenile, D.B., broke into an apartment, threatened the residents with a BB gun, and stole a limited-edition PlayStation controller and several video games. The Commonwealth filed a delinquency petition against J.A.D.-B. charging him with the above-mentioned delinquent acts.

At the conclusion of the adjudicatory hearing, the juvenile court concluded J.A.D.-B. committed the delinquent acts and was in need of treatment, supervision, or rehabilitation. The juvenile court later conducted a dispositional hearing, and on July 15, 2021, the court entered an order placing him at Adelphoi's secure residential facilities. The juvenile court also imposed costs and restitution and ordered J.A.D.-B. to complete 32 hours of community service.

J.A.D.-B. filed a timely post-dispositional motion seeking an arrest of judgment and modification of his placement. The juvenile court denied J.A.D.-

B.'s post-dispositional motion on November 5, 2021. The instant appeal followed.[2, 3]

In his first claim, J.A.D.-B. challenges the sufficiency of the evidence. In particular, J.A.D.-B. contends the Commonwealth failed to establish his identity as a participant in the home invasion. *See* Appellant's Brief at 11. He acknowledges that D.B. admitted to his own participation in the burglary and identified J.A.D.-B. as the second perpetrator. *See id.* at 12. However, J.A.D.-B. asserts that D.B. provided several inconsistent statements. *See id.* at 12-13. J.A.D.-B. also points to the victims' inability to identify him and the lack of physical evidence in the home. *See id.* at 13-14.

Further, J.A.D.-B. challenges the use of certain cell phone data during his adjudicatory hearing. J.A.D.-B. argues that his communications with D.B.

---

[2] The juvenile court took no action on J.A.D.-B.'s post-dispositional motion for several months. *See* Pa.R.J.C.P. 620(D)(1) (requiring a juvenile court to decide a post-dispositional motion "as soon as possible but within thirty days"). Once the thirty-day time period expires, the motion is deemed denied by operation of law, and Rule 620 requires the clerk of courts to enter an order on the court's behalf. *See* Pa.R.J.C.P. 620(D)(1), (3). However, the clerk of courts did not enter such order or otherwise note on the docket that the motion was denied by operation of law. J.A.D.-B. filed his notice of appeal within 30 days after the juvenile court denied his post-dispositional motion; therefore, we will consider the instant appeal as timely filed. *See Commonwealth v. B.H.*, 138 A.3d 15, 19 n.7 (Pa. Super. 2016).

[3] During the pendency of this appeal, the juvenile court conducted a dispositional review hearing. On January 7, 2022, the court entered an order directing J.A.D.-B. to remain at Adelphoi's secure residential facilities, but to transfer to Adelphoi's intensive supervision group home after successfully completing three weekend visits with intensive supervision.

and other juveniles had little value as circumstantial evidence and "was dubious at best due to the significant credibility issues of D.B. …." *Id.* at 14. J.A.D.-B. additionally challenges the use of data taken from his cell phone's health app, which provided his step count from the night of burglary without additional location data. *See id.* at 14-15.[4]

"An adjudication of delinquency requires the juvenile court to find that the juvenile: (1) has committed a delinquent act and (2) is in need of treatment, supervision, or rehabilitation." *Interest of C.B.*, 241 A.3d 677, 681 (Pa. Super. 2020) (emphasis omitted); *see also* 42 Pa.C.S.A. § 6341(b) (explaining that the juvenile's commission of a delinquent act must be established beyond a reasonable doubt, and the court may find the juvenile is in need of treatment, supervision, or rehabilitation by a preponderance of the evidence).[5]

> When a juvenile is charged with an act that would constitute a crime if committed by an adult, the Commonwealth must establish the elements of the crime by proof beyond a reasonable doubt. When considering a challenge to the sufficiency of the evidence following an adjudication of delinquency, we must review the entire record and view the evidence in the light most favorable to the Commonwealth.

---

[4] We note that J.A.D.-B. did not contest the admissibility of this evidence; rather, he purports to challenge its use as circumstantial evidence solely within the context of his sufficiency claim.

[5] Though J.A.D.-B. does not challenge the second required finding, we note that the juvenile court explicitly found him to be in need of rehabilitation, supervision, and treatment. *See* N.T., Non-Jury Trial, 6/25/21, at 413.

> In determining whether the Commonwealth presented sufficient evidence to meet its burden of proof, the test to be applied is whether, viewing the evidence in the light most favorable to the Commonwealth, and drawing all reasonable inferences therefrom, there is sufficient evidence to find every element of the crime charged. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence.
>
> The facts and circumstances established by the Commonwealth need not be absolutely incompatible with a defendant's innocence. Questions of doubt are for the hearing judge, unless the evidence is so weak that, as a matter of law, no probability of fact can be drawn from the combined circumstances established by the Commonwealth.

***In re V.C.***, 66 A.3d 341, 348-49 (Pa. Super. 2013) (citation omitted).

J.A.D.-B. challenges only the evidence establishing his identity as one of the perpetrators.[6] In its Opinion and Order, the juvenile court thoroughly addressed J.A.D.-B.'s sufficiency claim and concluded that it lacks merit. ***See*** Opinion and Order, 11/5/21, at 2-6; ***see also generally*** Appellant's Brief 11-16 (acknowledging the same evidence but arguing it does not support the court's inferences). The juvenile court expressly considered inconsistencies in D.B.'s testimony in conjunction with all other evidence introduced during the proceedings but declined to disregard D.B.'s identification of J.A.D.-B. as his co-conspirator. ***See*** Opinion and Order, 11/5/21, at 3-4. Additionally, the court considered a general description provided by the victim, data retrieved

---

[6] In his appellate brief, J.A.D.-B. provides very little citation to and discussion of relevant authorities. ***See*** Pa.R.A.P. 2119(a) (providing an appellate argument shall include "such discussion and citation of authorities as are deemed pertinent.").

from J.A.D.-B.'s cell phone, and the discovery of a limited-edition PlayStation controller in J.A.D.-B.'s home. *See id.* at 4-5.

J.A.D.-B. dedicates a significant portion of his argument to asserting the evidence highlighted by the juvenile court was unreliable. He claims D.B's testimony was contradictory; the eyewitness description was vague; and the health app data was equally capable of supporting innocent explanations. However, these arguments address the weight given to such evidence, not the sufficiency.

The juvenile court, as the finder of fact in this delinquency proceeding, was free to make credibility determinations and to believe all, part, or none of the evidence. *See Interest of D.J.B.*, 230 A.3d 379, 387 (Pa. Super. 2020). The evidence, viewed in the light most favorable to the Commonwealth as the verdict-winner, was sufficient to establish J.A.D.-B.'s identity as one of the perpetrators. Therefore, his first claim lacks merit.

In his second claim, J.A.D.-B. challenges his disposition, arguing his placement in Adelphoi's secure facilities is not the least restrictive placement option. *See* Appellant's Brief at 16. J.A.D.-B. states that his juvenile assessment report categorized him as a low or moderate risk in most categories. *See id.* at 17. J.A.D.-B. argues his needs could be addressed by other methods, such as schooling and counseling. *See id.* at 17-18. According to J.A.D.-B., the juvenile court focused too heavily on his prior placement at

home and the fact that the burglary giving rise to this adjudication occurred while J.A.D.-B. was on probation supervision. ***See id.*** at 18-19.[7]

Juvenile courts are afforded broad discretion to craft an appropriate disposition, and we will not disturb the disposition absent a manifest abuse of discretion. ***See Interest of C.B.***, 241 A.3d at 681. "[A]n abuse of discretion occurs when the court has overridden or misapplied the law, when its judgment is manifestly unreasonable, or when there is insufficient evidence of record to support the court's findings." ***Interest of D.W.***, 220 A.3d 573, 576 (Pa. Super. 2019) (citation and internal quotation marks omitted).

Section 6352 of the Juvenile Act sets forth six dispositional options for juveniles who have been adjudicated delinquent, including placement on supervision and commitment to a facility for delinquent children. ***See*** 42 Pa.C.S.A. § 6352(a). In choosing among these alternatives, a juvenile court must consider which dispositional alternative is

> consistent with the protection of the public interest and best suited to the child's treatment, supervision, rehabilitation and welfare, which disposition shall, as appropriate to the individual circumstances of the child's case, provide balanced attention to the protection of the community, the imposition of accountability for offenses committed and the development of competencies to enable the child to become a responsible and productive member of the community[.]

---

[7]J.A.D.-B.'s discussion of this issue includes no citations to relevant case law. ***See*** Pa.R.A.P. 2119(a). Though we could deem J.A.D.-B.'s claim waived on this basis, we will nevertheless address his disposition.

*Id.* Further, when a disposition involves an out-of-home placement, the juvenile court must explain on the record why such commitment is "the least restrictive placement that is consistent with the protection of the public and best suited to the child's treatment, supervision, rehabilitation and welfare." 42 Pa.C.S.A. § 6352(c).

During the disposition hearing, juvenile probation officer Nathan Shervinskie testified concerning his completion of the juvenile assessment report for J.A.D.-B. Shervinskie testified that J.A.D.-B. was on probation at the time he committed the burglary. *See* N.T., Disposition Hearing, 7/14/21, at 16. Shervinskie recognized a low score[8] in family circumstances and a moderate score in education and employment, based on grades and absences from school. *See id.* at 17-18; *see also id.* at 18-19 (explaining the education score indicated to Shervinskie that J.A.D.-B. would need more structure and accountability). J.A.D.-B. received a high score in peer relations, which indicates he "does not have many positive friends as in prosocial or non-delinquent friends...." *Id.* at 19-20. Shervinskie also testified that J.A.D.-B. reported marijuana use. *See id.* at 20. Ultimately, Shervinskie recommended

---

[8] Shervinskie explained that the juvenile assessment report provides background information for the juvenile and is used to aid in the determination of what level of supervision the juvenile will need. *See* N.T., Disposition Hearing, 7/14/21, at 13. For each background factor addressed, the juvenile may receive a score of low, moderate, high, and very high; these scores indicate the juvenile's risk level for each factor. *See id.* at 14; *see also* Commonwealth's Exhibit 1 (Juvenile Assessment Report).

placement at Adelphoi's secure facility, due to J.A.D.-B.'s prior delinquency, peer relations, and education needs. *See id.* at 21.

Further, Adelphoi's admissions liaison Ron Tanney testified that Adelphoi's secure facility works with juveniles to create an individual service plan. *See id.* at 45. Adelphoi works with Cambria County School District to provide educational programming and offers balanced and restorative justice classes, as well as aggression retraining, cognitive behavioral groups and counseling. *See id.* at 46, 48. Adelphoi can also help juveniles work on community service recommendations and restitution. *See id.* at 47-48. Tanney testified that Adelphoi has step-down programs available for juveniles who progress through their treatment goals. *See id.* at 50.

At the close of the hearing, the juvenile court emphasized that at the time J.A.D.-B. committed the instant delinquent acts, he was on supervision for another incident involving physical harm to another individual. *See id.* at 65; *see also id.* (noting a concern for community safety). Because J.A.D.-B. committed these acts while on juvenile probation, the court opined that he was not receiving the necessary supervision and guidance at home. *See id.* at 66. The juvenile court stated that Adelphoi's secure facility would be the least restrictive placement option and would provide J.A.D.-B. an opportunity to learn tools to succeed in the future. *See id.* at 66-67. Further, the court explained that J.A.D.-B. would be able to step down to less restrictive placements within the Adelphoi's program if he was successful. *See id.* at 67.

The juvenile court delineated the reasons for its disposition on the record in accordance with section 6352. The court also heard and considered the testimony of Shervinskie and Tanney concerning J.A.D.-B.'s placement needs and the programs available at Adelphoi. Moreover, the juvenile court fashioned a disposition to address J.A.D.-B.'s rehabilitative needs and his potential for treatment, while balancing the protection of the community and the need to impose accountability for the delinquent acts. ***See*** 42 Pa.C.S.A. § 6352(a); ***see also Interest of D.W.***, 220 A.3d at 580-81 (juvenile court did not abuse its discretion by imposing an out-of-home placement where the record was clear that juvenile's treatment and supervision needs could not be satisfied at home). The record supports the juvenile court's findings, and we discern no abuse of the court's discretion in directing out-of-home placement in a secure facility with the possibility for J.A.D.-B. to progress through less restrictive options. Therefore, this claim merits no relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/29/2022

Received 1/26/2022 11:19:59 AM Superior Court Middle District

Filed 1/26/2022 11:19:59 AM Superior Court Middle District

# IN THE COURT OF COMMON PLEAS, CENTRE COUNTY, PENNSYLVANIA
## JUVENILE DIVISION

IN THE INTEREST OF:                     :
                                        :
J.A.D.B.                                :       CP-14-JV-5-2021
                                        :
                                        :
                                        :
                                        :

*Attorney for the Commonwealth:*        Amanda Chaplain, Esq.
*Attorney for the Defendant:*           Stephanie VanHorn, Esq.[1]

Oliver, J.

## OPINION and ORDER

Presently before the Court are Post-Dispositional Motions filed on behalf of J.A.D.B. (the "Juvenile") in the above-referenced matter on July 22, 2021. The Juvenile challenges both the adjudication of delinquency and the Court's disposition determination in this matter. Pursuant to a scheduling Order issued by the Court, the Juvenile's brief in support was filed on August 24, 2021, and the Commonwealth filed a brief in opposition on September 22, 2021. For the reasons discussed below, the Juvenile's Post-Dispositional Motions are denied.

A.    *Delinquency Adjudication*

The subject delinquent acts in this case involve a home invasion burglary that occurred on May 24 into May 25, 2020, at or around midnight, in Boalsburg, Pennsylvania, when two individuals broke into an occupied apartment, threatened one of the residents with a gun,[2] and stole video games and equipment before fleeing.

The Juvenile's delinquency adjudication hearing was held on June 25, 2021. Following a full day hearing, the Court found the Juvenile to be delinquent as to the following sixteen charges: Burglary (F1); Conspiracy to Commit Burglary (F1); Robbery (F2); Conspiracy to Commit Robbery (F2); Criminal Trespass (M1); Conspiracy to Commit Criminal Trespass (M1);

---

[1] The Juvenile was represented at the adjudication and disposition hearings, as well as in filing his Post-Dispositional Motions, by Justin Miller, Esquire. A substitution of counsel was filed on September 1, 2021, and Attorney VanHorn was appointed as counsel for the Juvenile.

[2] It is believed that the gun used was likely a BB gun. The victim testified that the weapon looked very real, and that he thought it was a pistol. There was no evidence that the weapon was ever recovered.

Theft by Unlawful Taking (M1); Conspiracy to Commit Theft by Unlawful Taking (M1); Receiving Stolen Property (M1); Conspiracy to Commit Receiving Stolen Property (M1); Possession of Instrument of Crime (M1); Possession of Weapon (M1); Terroristic Threats (M1); Simple Assault (M2); Recklessly Endangering Another Person (M2); and Tamper With/Fabricate Physical Evidence (M2).

In his Post-Dispositional Motions, the Juvenile states in conclusory fashion that, as to all charges, the Commonwealth's evidence was insufficient to sustain the adjudication because the Commonwealth failed to prove that the Juvenile was the individual who committed the subject offenses. The Juvenile raises a weight of the evidence challenge on this same basis. These issues are addressed below.

### 1. Sufficiency of Evidence

A challenge based on the sufficiency of the Commonwealth's evidence presents a question of law. *Commonwealth v. Kennedy*, 151 A.3d 1117, 1121 (Pa. Super. 2016). The Court must determine whether, "viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that the Commonwealth proved each element of the crime beyond a reasonable doubt." *Commonwealth v. Wall*, 953 A.2d 581, 584 (Pa. Super. 2008), *appeal denied*, 963 A.2d 470 (Pa. 2008). Relief will only be granted when the Commonwealth has failed to meet its burden of proof beyond a reasonable doubt with respect to any of the elements that comprise the offense at issue. *Commonwealth v. Abed*, 989 A.2d 23, 26 (Pa. Super. 2010). Doubts regarding guilt are to be resolved by the fact-finder. *In the Interest of C.E.H.*, 167 A.3d 767, 770 (Pa. Super. 2017).

The Commonwealth may establish a juvenile's culpability by wholly circumstantial evidence. *In the Interest of C.E.H.*, 167 A.3d at 770. "The fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence." *Commonwealth v. Lovette*, 450 A.2d 975, 977 (Pa. 1982). Resolution of questions regarding doubt is within the province of the fact-finder, and the fact-finder is "free to believe all, part, or none of the evidence presented." *In the Interest of C.E.H.*, 167 A.3d at 770.

2

The stated basis for the Juvenile's sufficiency of the evidence challenge as to each of the sixteen charges stemming from this incident is the Juvenile's contention that the court ignored evidence tending to show he was not the perpetrator of the crimes. (*See* Br. Supp. Juv.'s Post-Disp. Mot.'s at 2). The Juvenile points first to trial testimony from D.B., one of the two perpetrators of the home invasion burglary, arguing that D.B.'s testimony, combined with the lack of fingerprint or hair fiber evidence tying the Juvenile to the scene, raises significant doubt regarding the identity of the second perpetrator. The Court disagrees with the Juvenile's characterization of D.B.'s testimony and his overall assessment of the evidence.

As to D.B.'s testimony, the evidence at the adjudication proceeding established that D.B. previously admitted to being one of the two perpetrators of the home invasion burglary. D.B. was subpoenaed to testify by the Commonwealth at the Juvenile's adjudication hearing, and it was evident from both D.B.'s demeanor and his testimony that he was a reluctant witness. D.B.'s testimony during the adjudication hearing was not consistent with statements he previously gave regarding the incident. At the hearing, D.B. first testified that he was the only person present during the home invasion burglary. He then changed his story to say another individual was with him but he did not know that person's identity.[3] D.B. also testified that it was this unknown second perpetrator who had possessed the gun during the incident.

Following this initial testimony by D.B., the Commonwealth introduced evidence of several prior inconsistent statements D.B. made in which he identified the Juvenile as the second individual involved in the home invasion incident. Among these statements were: (i) D.B.'s sworn testimony during a court colloquy when D.B. made an admission in his own delinquency case; and, (ii) audio/video recorded police interviews of D.B. on June 5, 2021. In each of these statements, D.B. identifies the Juvenile as the other individual involved in the incident and the person who was in possession of the gun used to threaten the male victim, Mr. Cohenour, whom the juveniles encountered in the home. The Juvenile argues D.B.'s prior inconsistent statements must be discounted because the police first suggested the Juvenile as the other perpetrator when questioning D.B., and because D.B. testified that the police coerced him into identifying the Juvenile as the other perpetrator and that he lied to police to try and keep himself out of trouble. In addition to the police interviews and in-court sworn colloquy, however, the Commonwealth

---

[3] Testimony from the victims also established that there were two perpetrators in the incident.

3

introduced testimony at the adjudication hearing from several witnesses who testified that D.B. had told them, even before ever talking with police, that he and the Juvenile were the perpetrators of the home invasion. The fact that these identifications to friends and/or acquaintances were made even before D.B. spoke to police substantially undermines the argument that he only named the Juvenile as the second perpetrator because he had been pressured to do so by suggestive questioning by the police officers. Thus, the Court rejects the argument that D.B.'s statements identifying the Juvenile as his co-conspirator must be discounted.

The Court also rejects the suggestion that the Commonwealth failed to present other evidence, in addition to D.B.'s testimony, pointing to the Juvenile as the second perpetrator. Although the evidence is primarily circumstantial in nature, the Court found it sufficient, when coupled with D.B.'s identification of the Juvenile, to prove that the Juvenile committed the delinquent acts as charged.

The evidence established that D.B. and the Juvenile are acquaintances, and that they live across the street from one another in Ashworth Woods, a housing development in Boalsburg, Pennsylvania. That development is approximately seven-tenths of a mile, within easy walking distance, from the residence where the home invasion occurred. A data extraction from the Juvenile's cell phone, specifically from the Health App on the device, showed that the Juvenile had taken approximately 3,357 steps between the hours of 11:34 p.m. on May 24, 2020 and 12:21 a.m. on May 25, 2020. Detective Stephen Bosak, one of the law enforcement officers involved in investigating the crimes, testified that he walked the area from the Juvenile's residence to the site of the crime and back, and that the step data recorded on his phone showed 3,372 steps. This evidence tended to show that the Juvenile had walked the distance it would have taken to get from his home to the crime scene and back on the night of the incident in the relevant timeframe.

There was also a description given by the victim who was confronted with the gun, Mr. Cohenour. He described the perpetrator with the gun as being approximately 6' to 6'2" tall and having a slender build and a dark complexion,[4] all characteristics consistent with the Juvenile's

---

[4] The perpetrator was wearing a ski mask during the incident, but Mr. Cohenour could see from the eyeholes in the mask that he had a dark complexion.

appearance. He also testified that the individual wore ripped, stylized jeans. The victim described the gun used by the perpetrator as looking like a pistol and having a chrome slide. The Commonwealth introduced a video clip extracted from the Juvenile's cellphone showing the Juvenile and another person making a music video. In the video, the Juvenile displays a gun with a chrome slide (possibly a BB gun). The video had been received on the Juvenile's phone on June 8, 2020, approximately two weeks after the home invasion burglary. GPS coordinates from the video's metadata showed that the video was created at or near 781 Ashworth Lane. The Juvenile lived at 788 Ashworth Lane. The victim testified that the gun in the video looked like the gun that had been pointed at him during the night of the home invasion incident. The victim also testified that the jeans the Juvenile wore in the video looked similar to the ripped, stylized jeans worn by the perpetrator holding the gun during the home invasion. In addition, data extracted from the Juvenile's cell phone showed that a news story about the break-in had been downloaded to his phone the day of the burglary on May 25, 2020. Yet, during an interview with police on June 5, 2020, the Juvenile claimed he had not even heard about the home invasion.

There was also evidence that police collected two of the stolen items (video games) during their interview with D.B., who informed them that the Juvenile had the rest of the stolen property. Although they did not ultimately retrieve it, police found a PlayStation controller matching the description of one of the stolen items at the Juvenile's home when they arrived with a warrant to search for the property.[5] Police were initially mistaken about the item, believing it was not a match. When they returned after realizing their error, they were told the property had been returned to its owner in the Philadelphia area, a friend of a friend of the Juvenile's brother, and that no one had contact information for this individual so the item could not be retrieved.

Finally, the Court notes that the Juvenile called O.B. as an alibi witness. O.B. testified that he was with the Juvenile on the night in question, and that they had spent the evening at a party and then at the Juvenile's home. The testimony of this witness was thin, at best, and was not credible when considered in conjunction with the other trial evidence. Notably, O.B.'s testimony that he was with the Juvenile in Boalsburg on the night in question was directly contradicted by Commonwealth witness N.J., who testified that he was with O.B. in Harrisburg on the night of

---

[5] The controller came as part of a Special Edition PlayStation 4 bundle and had unique identifying characteristics.

the home invasion. O.B.'s testimony was also inconsistent with step data extracted from the Health App on the Juvenile and O.B.'s cell phones that tended to show they were not walking together at the times in question as O.B. had testified. In addition, the Juvenile did not identify O.B. as an alibi witness when he was initially interviewed by the police on June 5, 2020. In his own testimony at the adjudication hearing, the Juvenile stated he had been with O.B. that night at the time of the events in question, and that they were at a party and then at his home. He could not give any plausible explanation as to why he had not told police he was with O.B. that night when he was questioned by police much closer in time to the events at issue.

Looking at the evidence as a whole, the Court finds no merit in the Juvenile's argument that the evidence was not sufficient to prove that he took part in the home invasion along with D.B. and was the individual who threatened the male victim with a gun. The Court believes the identification from co-conspirator D.B., along with the circumstantial evidence outlined above, was sufficient for the Commonwealth to meet its burden of proving the Juvenile's participation in the home invasion robbery beyond a reasonable doubt. Consequently, the Juvenile's sufficiency of the evidence challenge is denied.

### 2. Weight of the Evidence

A challenge to the weight of the evidence requires inquiry into whether, "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all facts is to deny justice." *Commonwealth v. Richard*, 150 A.3d 504, 516-17 (quoting *Commonwealth v. Clay*, 64 A.2d 1049, 1055 (Pa. 2013)). The reviewing court must determine whether the evidence is so contrary as to "shock one's sense of justice" and dictate that a new trial be granted in order that "right may be given another opportunity to prevail." *Id.* *See also In re J.B.*, 106 A.3d 76, 95 (Pa. 2014). Questions regarding the weight to be given to the testimony are matters exclusively for the trier of fact. *Commonwealth v. Forbes*, 867 A.2d 1268, 1273-74 (Pa. Super. 2005).

In asserting his weight of the evidence challenge, the Juvenile states in bald fashion that the Commonwealth did not sufficiently explain the "gaps in its evidence" to sustain its burden of proving, beyond a reasonable doubt, that the juvenile was the perpetrator of the acts in question. The Court believes this broad challenge is addressed by the discussion regarding the sufficiency of the evidence challenge, above. The Court accepted as true the statements by D.B. identifying

6

the Juvenile as his co-conspirator and credited the testimony of the other Commonwealth witnesses. The Court did not believe the testimony of the Juvenile or his alibi witness. These determinations, and the weight to be afforded the evidence, are clearly within the province of the court as the trier of fact. The Court finds no error in these determinations.

### B.   Disposition

In determining the disposition for a delinquent juvenile, courts must consider the protection of the public interest and the juvenile's needs in terms of treatment, rehabilitation, supervision and welfare. See 42 Pa. C.S.A. § 6352(a). The disposition must be tailored to the individual circumstances of the case, and must provide "balanced attention to the protection of the community, the imposition of accountability for the offenses committed and the development of competencies" so the juvenile can become a responsible and productive community member. Id. Among the many disposition alternatives, the court may make a disposition order that commits the juvenile to out-of-home placement, provided that such an alternative is found to be the least restrictive alternative consistent with the protection of the public, the imposition of accountability and the rehabilitative needs of the juvenile. Id. § 6352(a)(3); see also 42 Pa.C.S. § 6301.

In challenging the disposition decision in the case at bar, the Juvenile contends the Court erred in ordering the Juvenile's placement at Adelphoi Secure Manor, a secure placement facility, because the evidence showed that his treatment needs could be sufficiently met with tools and resources available through community supervision. The Juvenile argues that the disposition order should be vacated and the Juvenile retuned to the care and custody of his mother under standard supervision by the juvenile probation department. The Court disagrees.

A juvenile assessment report ("JAR") was completed by the juvenile probation department at the direction of the Court. The overall risk level for the Juvenile as identified by the assessment analysis was "moderate." He scored "high" in the prior delinquency/court appearances and peer relations categories. This was reflective of the Juvenile's previous delinquent acts and placement and close friendships with other juveniles who have been involved with the court system and otherwise exhibit delinquent attitudes. Officer Nathan Shervinskie from Centre County Juvenile Probation testified to his opinion, based on his experience, his completion of the JAR, and the circumstances of the delinquent acts at issue, that the Juvenile's

7

needs include educational support, development of decision-making and problem-solving skills, and skills in terms of identifying and forming appropriate, healthy peer relations. Given the nature of the underlying delinquent acts and the fact of the Juvenile's prior placement and his continuing needs, the probation department recommended secure placement as the least restrictive alternative to meet the Juvenile's needs and assure the safety of the community.

The Court emphasizes that the Juvenile's delinquent conduct in the present case was aggressive and presented a significant danger to the community; the Juvenile broke into an occupied home at night and threatened one of the residents with a weapon. This is not the first time the Juvenile has been involved in crimes of aggression. As reflected in the JAR, the juvenile was previously adjudicated delinquent for charges including aggravated assault, simple assault and recklessly endangering another person. Disposition in that matter included placement and a release to his family's home under probation supervision. Significantly, the delinquent acts giving rise to the present case occurred while the Juvenile was still on probation supervision for the prior delinquent acts, and while he was in the care and custody of his mother. Thus, although it may be possible, theoretically, to provide the kinds of supports and tools identified as necessary for the Juvenile's rehabilitation in the community setting, the Court determined that the specific circumstances of the present case demonstrate that the Juvenile needs a higher level of supervision than can be provided in the community, both for the sake of fostering the Juvenile's rehabilitation and for the safety of the community.

The Court heard testimony from a representative of the placement facility regarding the programs offered, and the ability to step down to less restrictive placement if and when the Juvenile makes progress in his treatment goals. The Court believes placement at Adelphoi Manor Secure Treatment Program is best suited to the Juvenile's needs in terms of treatment, rehabilitation, and supervision, and best serves the community safety goal while the Juvenile addresses these needs. The Court also determined that the aforementioned placement is the least restrictive alternative in light of the Juvenile's significant needs and unsuccessful adjustment to standard supervision following his past placement. The Court thus denies the Juvenile's post-dispositional motion to vacate the disposition order and return him to the care and custody of his mother.

Consistent with the foregoing, the Court enters the following Order:

8

## ORDER

AND NOW, this 5ᵗʰ day of November, 2021, for the reasons discussed in the foregoing

Opinion, the Juvenile's Post-Dispositional Motions in the above-referenced case are DENIED.

BY THE COURT:

Date: 11-5-21

Katherine V. Oliver, Judge

9