J-S37020-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: A.S., MINOR | : | |
| | : | No. 3180 EDA 2022 |

Appeal from the Dispositional Order Entered November 9, 2022
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s):  CP-51-JV-0000511-2022

BEFORE:  BENDER, P.J.E., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                **FILED FEBRUARY 9, 2024**

A.S., a minor,[1] appeals from the dispositional order entered following his adjudication of delinquency for acts constituting aggravated assault, conspiracy, terroristic threats, simple assault, and recklessly endangering another person ("REAP").[2]  We affirm.

The factual and procedural history of this case is as follows: In April of 2022, A.P. ("the victim") was at his girlfriend's home when he observed a group of juveniles approaching the house.  *See* N.T., 9/9/22, at 6-9.  The victim went outside and asked the juveniles what they wanted; A.S. told him to send the girlfriend's young nephew outside.  *See id*. at 9-10.  The victim

_____

[1] A.S. was fourteen at the time of the incident.  *See* N.T., 11/9/22, at 6.

[2] *See* 18 Pa.C.S.A. §§ 2702(a)(1), 903, 2706(a)(1), 2701(a), and 2706.

asked what was happening, but A.S. refused to answer and, using foul language, demanded the victim send out the boy. *See id*. When the victim refused, A.S. said he was going to "have somebody come here and shoot this whole block and this house up." *Id*. at 11.

A.S., while talking on his cell phone, walked with his friends to a corner store. *See id*. at 12. While staring at the victim, A.S. made and received multiple cell phone calls to the same number over a twenty-five-minute span. *See id*. at 12-14; Commonwealth's Exhibits C-21A and C-21B. Soon after, a white car with tinted windows pulled up near A.S. *See id*. at 14. A.S. approached the car and spoke with the occupants for approximately five minutes. *See id*. at 16. A.S. walked away from the car and yelled at the victim that people "better get in the house, something bad is about to happen." *Id*. A.S. began to leave the scene as the car drove by the victim. *See id*. at 16-17. One of the occupants yelled, "Is there a problem, pussy!?" and shot the victim in the leg, seriously injuring him. *Id*. at 16-18.

Portions of the incident were witnessed by the victim's girlfriend and her parents. Further, most of the incident was captured on video. An adjudicatory hearing took place on September 9, 2022. The Commonwealth presented the testimony of the victim and three other witnesses, as well as A.S.'s cell phone records, the videos, crime scene photos, and the victim's medical records.

A.S. did not testify and did not present any evidence. At the close of the hearing, the juvenile court adjudicated A.S. delinquent of the above offenses. The juvenile court ordered a behavioral health evaluation ("BHE"). In accordance with the BHE's recommendations, the probation office attempted to find a structured non-residential placement for A.S., but was unsuccessful because of "the seriousness of the crime[,]" and A.S.'s youth. Juvenile Court Opinion, 2/8/23, at 15; *see also* N.T., 11/9/22, at 5-6. The juvenile court therefore issued a dispositional order calling for state placement. A.S. filed a timely post-dispositional motion, which the juvenile court denied. This timely appeal followed.[3]

A.S. raises the following issues for our review:

1. Whether the evidence presented at trial was insufficient as a matter of law to sustain the verdicts of guilty for the crimes of aggravated assault, conspiracy to commit aggravated assault, terroristic threats, simple assault, and [REAP]?

2. Whether the evidence presented at trial was against the weight of the evidence to sustain the verdicts of guilty for the crimes of aggravated assault, conspiracy to commit aggravated assault, terroristic threats, simple assault, and [REAP]?

3. Whether the disposition imposed was an abuse of discretion?

A.S.'s Brief at 5-6 (unnecessary capitalization omitted).

---

[3] A.S. and the juvenile court complied with Pa.R.A.P. 1925.

In his first issue, A.S. challenges the sufficiency of the evidence. ***See***

A.S.'s Brief at 11-21. This Court's review of such claims in an adjudication of

delinquency setting is well settled:

> [w]hen a juvenile is charged with an act that would constitute a crime if committed by an adult, the Commonwealth must establish the elements of the crime by proof beyond a reasonable doubt. When considering a challenge to the sufficiency of the evidence following an adjudication of delinquency, we must review the entire record and view the evidence in the light most favorable to the Commonwealth.
>
> In determining whether the Commonwealth presented sufficient evidence to meet its burden of proof, the test to be applied is whether, viewing the evidence in the light most favorable to the Commonwealth, and drawing all reasonable inferences therefrom, there is sufficient evidence to find every element of the crime charged. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence.
>
> The facts and circumstances established by the Commonwealth need not be absolutely incompatible with a defendant's innocence. Questions of doubt are for the hearing judge, unless the evidence is so weak that, as a matter of law, no probability of fact can be drawn from the combined circumstances established by the Commonwealth.

***In re V.C.***, 66 A.3d 341, 348–49 (Pa. Super. 2013) (citation omitted).

A juvenile may be adjudicated delinquent for conspiracy if "with the

intent of promoting or facilitating its commission he: (1) agrees with such

other person or persons that they or one or more of them will engage in

conduct which constitutes such crime or an attempt or solicitation to commit

- 4 -

such crime; or (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime." 18 Pa.C.S.A. § 903(a).

To prove the existence of a criminal conspiracy, the Commonwealth must demonstrate the juvenile: "(1) entered an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared a criminal intent and, (3) an overt act was done in furtherance of the conspiracy." *Commonwealth v. Chambers*, 188 A.3d 400, 409-10 (Pa. 2018) (citations omitted). "Once the conspiracy is established beyond a reasonable doubt, a conspirator can be convicted of both the conspiracy and the substantive offense that served as the illicit objective of the conspiracy." *Id*. at 410 (citations omitted). Moreover, the essence of criminal conspiracy is the agreement between co-conspirators. We have explained:

> [M]ere association with the perpetrators, mere presence at the scene, or mere knowledge of the crime is insufficient to establish that a defendant was part of a conspiratorial agreement to commit the crime. There needs to be some additional proof that the defendant intended to commit the crime along with his co-conspirator. Direct evidence of the defendant's criminal intent or the conspiratorial agreement, however, is rarely available. Consequently, the defendant's intent as well as the agreement is almost always proven through circumstantial evidence, such as by the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators. Once the trier of fact finds that there was an agreement and the defendant intentionally entered into the agreement, that defendant may be liable for the overt

acts committed in furtherance of the conspiracy regardless of which co-conspirator committed the act.

***Commonwealth v. Golphin***, 161 A.3d 1009, 1018–19 (Pa. Super. 2017) (citations omitted).

A juvenile may be adjudicated delinquent for aggravated assault if he "(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2701(a). "Serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." ***See*** 18 Pa.C.S.A. § 2301. Lastly, "[w]hen a victim actually sustains serious bodily injury, the Commonwealth can, but does not necessarily have to, establish specific intent to cause such harm." ***Commonwealth v. Sinkiewicz***, 293 A.3d 681, 690 (Pa. Super. 2023) (citation omitted). A juvenile may be adjudicated delinquent for simple assault if he, "(1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[.]" 18 Pa.C.S.A. § 2701.

A juvenile may be adjudicated delinquent for REAP if he: "recklessly engages in conduct which places or may place another person in danger of

death or serious bodily injury." 18 Pa.C.S.A. § 2705. "[REAP] requires the creation of danger, so the Commonwealth must prove the existence of an actual present ability to inflict harm to another." *Commonwealth v. Shaw*, 203 A.3d 281, 284 (Pa. Super. 2019).

A juvenile may be adjudicated delinquent for terroristic threats if he: "communicates, either directly or indirectly, a threat to . . . commit any crime of violence with intent to terrorize another." 18 Pa.C.S.A. § 2706(a)(1). An individual acts intentionally with respect to a material element of an offense when "it is his conscious object to engage in conduct of that nature or to cause such a result[.]" 18 Pa.C.S.A. § 302(b)(1)(i). Therefore, to sustain a conviction for terroristic threats, the evidence must demonstrate: "(1) the defendant made a threat to commit a crime of violence; and (2) such threat was communicated with the intent of terrorizing another or with reckless disregard for the risk of causing terror." *In the Interest of L.A.*, 853 A.2d 388, 391-92 (Pa. Super. 2004) (citation omitted).

Before proceeding to the merits of A.S.'s sufficiency arguments, we must first determine whether he has preserved them for our review. Pennsylvania Rule of Appellate Procedure 1925(b) provides in a statement of matters complained of on appeal, an appellant "shall concisely identify each error that the appellant intends to assert with sufficient detail to identify the

issue to be raised for the judge," and issues ***that are not properly raised are deemed waived***.  Pa.R.A.P. 1925(b)(4)(ii), (vii).  This Court has repeatedly stated:

> In order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement ***must state with specificity the element or elements [of the challenged offense] upon which the appellant alleges that the evidence was insufficient***.  Such specificity is of particular importance in cases where . . . an appellant was convicted of multiple crimes[,] each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt.

***In Interest of J.G.***, 145 A.3d 1179, 1189 (Pa. Super. 2016) (citation omitted, emphasis added).

Here, the juvenile court adjudicated A.S. delinquent for five separate crimes, each of which contained numerous elements.  In his Rule 1925(b) Statement, A.S. simply included a general list of the offenses and failed to specify which elements of each offense he was challenging for lack of sufficient evidence.  ***See*** Statement of [Errors] Complained of on Appeal, 12/21/22, at 1 (unnumbered).  Therefore, we are constrained to conclude that A.S. waived his sufficiency issue.  ***See In Interest of J.G.***, 145 A.3d at 1189.

Even absent waiver, however, A.S.'s claim would not merit relief.  The juvenile court adjudicated A.S. delinquent for acts which would constitute conspiracy, aggravated assault, simple assault, REAP, and terroristic threats.

A.S. argues there was "insufficient evidence as a matter of law to show an 'agreement' required by law between [A.S.] and the unidentified assailant" to support his adjudication of conspiracy and the derivative offenses. A.S.'s Brief at 9. A.S. maintains the evidence was insufficient to sustain his adjudication for terroristic threats because his statements to the victim are "best characterized as transitory anger" and "spur-of-the-moment threat[s] due to his childish immaturity." *Id*. Lastly, A.S. contends the evidence was insufficient to sustain his adjudication for REAP because it was not his "direct conduct which created the danger to [the victim] but rather the criminal acts of an unknown individual whom [A.S.] had no influence nor control upon." *Id*.

Here, in concluding the evidence was sufficient to sustain the adjudication of delinquency with respect to conspiracy, aggravated assault, simple assault, and REAP, the juvenile court explained:

> [T]he evidence presented by the Commonwealth at trial[] was overwhelming[.] . . . It is indisputable [the victim] suffered serious bodily injury. The testimony of [the victim] himself, his medical records, and photos of the crime scene establish substantial loss of blood, and protracted loss or impairment of a bodily member, namely his left leg. [The victim] testified when asked about his crutches, that his doctors have told him he may never walk normally again. He endured multiple surgeries and months after the incident still had metal plates and screws in his leg to hold his bone together following the shooting injury. Because it is clear [the victim] suffered serious bodily injury, the Commonwealth did not need to prove specific intent. Regardless, multiple witnesses testified [A.S.] said he would have the block

and [the victim's] home "shot up." While making these statements, [A.S.] was observed taking out his cell phone and placing a call. Eyewitnesses, video footage, and cell phone records corroborate this fact. Following the phone call, an unknown white vehicle approached [A.S.]. Someone in the vehicle had a brief exchange with [A.S.]. [A.S.] yelled [] "something bad is about to happen" when walking away from the car, and then [the victim was] shot by someone inside the vehicle. The evidence presented demonstrated to the [juvenile] court [A.S.] entered [] a conspiracy with the individual(s) in the white vehicle. [A.S.] summon[ed] the conspirators in the white vehicle by making multiple phone calls, [met and spoke] with the individual(s) inside the white vehicle, and finally yell[ed] out that something bad [was] about to happen while distancing himself from the car. Immediately thereafter, gun shots rang out from the white vehicle and [the victim] suffer[ed] a gunshot wound. Since an overt act which constitutes a crime was committed, the Commonwealth satisfied the three elements [of conspiracy] as required by law. Because defendants are culpable for the acts of their co-conspirators, even if [A.S.] is not the one who shot the gun, he remains guilty of aggravated [and simple] assault due to the acts of his co-conspirator(s). [The victim] suffered serious bodily injury as a direct result of the shot fired by a gun in a vehicle with which [A.S.] had contact mere moments before. The combined evidence of credible witnesses, surveillance footage, medical, and cell phone records, proved beyond a reasonable doubt that the offenses of aggravated assault[, simple assault,] and conspiracy to commit the same were substantiated.

* * * *

In the instant case, it is clear [A.S.] possessed a reckless mindset, as the use of a weapon is routinely used to cause death or great injury and yet he still sought out an individual to inflict such harm on [the victim]. . . . By summoning the conspirator(s) to the scene, [A.S.] created substantial and unjustifiable risk of great danger for [the victim]. . . . The fact [the victim] was so severely injured is indisputable. . . . The record established all three elements of REAP.

- 10 -

Juvenile Court Opinion, 2/8/23, at 9, 13 (citations to the record omitted).

The juvenile court also found the evidence sufficient to sustain the adjudication for terroristic threats, stating:

[M]ultiple eyewitnesses credibly testified [A.S.] verbally in-person communicated threats of violence toward the [victim]. [A.S.] and [the victim] engaged in a verbal altercation prior to the threat being made. [A.S.] stated to [the victim] that he would have both his home and the block "shot up" with the intent to terrorize [the victim]. [A.S.] consciously disregarded a substantial and unjustifiable risk. [A.S.] not only verbally communicated his threat, but subsequently carried out his threats by planning and aiding his conspirator(s) in the white vehicle [in shooting the victim]. The record shows [A.S.] was [] aware of the unreasonableness of his own actions, when he yelled out on location that something bad was about to happen while distancing himself from the shooter inside the white vehicle. [A.S.] was also well aware that gunshots are inherently violent and likely to cause substantial psychological distress to the witnesses when he made verbal threats prior to the shooting. . . . [T]he Commonwealth established its burden beyond a reasonable doubt.

*Id*. at 10-11 (record citations omitted).

Following our thorough review of the record and the law, we conclude both support the trial court's determination that the evidence was sufficient to sustain A.S.'s convictions for conspiracy, aggravated assault, simple assault, REAP, and terroristic threats. Thus, even if not waived, A.S.'s first issue would not merit relief. *See Commonwealth v. Campbell*, 253 A.3d 346, 347-48 (Pa. Super. 2021) (holding statement made during an argument

- 11 -

between a contractor and homeowner that if the victim did not give the contractor money for supplies, he would "finish" him was not a mere statement made in anger but was sufficient to sustain a conviction for terroristic threats where contractor later hit the homeowner in the head with a tire iron); ***Commonwealth v. Rosario***, 248 A.3d 599, 611-12 (Pa. Super. 2021) (holding the evidence was sufficient to sustain convictions for conspiracy and aggravated assault, where appellant and a co-conspirator communicated by cell phone regarding the victims' location, they then met and communicated in person, appellant made verbal threats against the victim, and was present when a co-conspirator shot the victim); ***Commonwealth v. Reynolds***, 835 A.2d 720, 726 (Pa. Super. 2003) (citation omitted) (noting the act of pointing a loaded gun at a person is sufficient to support a conviction for REAP).

A.S. next argues his adjudication of delinquency was against the weight of the evidence. Our standard of review is settled:

> [A]n allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed.
>
> Where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence.

- 12 -

Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice. This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained, the term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law[] and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice[,] or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

In sum, the juvenile court should reverse an adjudication of delinquency when it is so contrary to the evidence as to shock one's sense of justice and the award of a new hearing is imperative so that right may be given another opportunity to prevail.

*Interest of D.J.K.*, 303 A.3d 499, 506 (Pa. Super. 2023) (internal citations, quotation marks, and some brackets omitted; paragraph indentation altered).

A.S. complains the victim's testimony was "void of credibility" because the victim had a prior conviction for burglary. A.S.'s Brief at 10. He further

- 13 -

argues the victim's testimony was "repeatedly incongruent"[4] with the video presented by the Commonwealth. *Id*.

The juvenile court considered A.S.'s weight claim and determined it lacked merit. The court reasoned:

> [T]he [juvenile] court discerned no inconsistencies in the evidence presented and found all witnesses credible. Each eyewitness corroborated each other's recollection of the day, as well as the video footage corroborated each eyewitness's recollections. The evidence clearly established [A.S.] engaged in a verbal altercation with [the victim], who attempted to diffuse the situation. Rather than calming down and leaving the scene, [A.S.] instead called upon unknown individuals multiples times and those persons came to the scene in a white vehicle and shot [the victim], resulting in multiple surgeries to his leg and continued pain and suffering months after the fact. [A.S.] spoke with the individual(s) in the vehicle who then shot [the victim]. The videos corroborated the eyewitnesses' testimony. [A.S.] did not hesitate in approaching the vehicle; rather the vehicle came straight to [A.S.] on the street corner. The witnesses were credible, the other recorded evidence was credible, and the [juvenile] court did not abuse its discretion against the weight of the evidence. The [juvenile] court's decision does not shock one's sense of justice.

Juvenile Court Opinion, 2/8/23, at 13-14 (citations to the record omitted).

We discern no abuse of discretion by the juvenile court in reaching its determination the verdict did not shock its conscience. The Commonwealth presented direct and circumstantial evidence that showed A.S. confronted the

---

[4] A.S. does not specify how the video evidence was "incongruent" with the victim's testimony. *See* A.S.'s Brief at 21-23.

victim, made multiple phone calls to the same number, threatened the victim, approached, and spoke with the shooter at the scene of the shooting, and, immediately thereafter, the shooter shot the victim. That the juvenile court chose to believe the testimony provided by the victim, three eyewitnesses, and the video evidence was entirely within its province. A.S. essentially requests we re-weigh the evidence and assess the credibility of the witnesses presented at trial. This we cannot do, as it is a task that is beyond our scope of review. The juvenile court, as finder of fact, had the duty to determine the credibility of the witnesses and evidence presented at trial. **See Commonwealth v. Collins**, 70 A.3d 1245, 1251 (Pa. Super. 2013) ("[a]n appellate court cannot substitute its judgment for that of the finder of fact"). Questions about inconsistent testimony go to the credibility of the witnesses, and it is solely for the finder-of-fact to resolve any conflicts or inconsistencies, and to determine how much weight to give to a particular witness's testimony. **See Commonwealth v. Upshur**, 764 A.2d 69, 74 (Pa. Super. 2000). Here, although A.S. vigorously challenged the credibility of the victim, he chose not to cross-examine the remaining eyewitnesses, nor did he so undermine the Commonwealth's evidence as to render it completely unbelievable. Ultimately, the juvenile court found the evidence provided by the Commonwealth credibly demonstrated A.S. conspired with the assailants to

shoot the victim. Accordingly, we decline to disturb the juvenile court's rejection of A.S.'s challenge to the weight of the evidence.

In his third and final issue, A.S. claims the trial court abused its discretion in committing him to state placement. A.S.'s Brief, at 23-25. We review "a juvenile court's dispositional order directing out-of-home placement for an abuse of discretion." **Interest of D.W.**, 220 A.3d 573, 576 (Pa. Super. 2019) (citation omitted). We will not disturb the disposition implemented by juvenile court absent a manifest abuse of discretion. **In re R.D.**, 44 A.3d 657, 681 (Pa. Super. 2012). "It is well settled that, under Pennsylvania law, an abuse of discretion occurs when the court has overridden or misapplied the law, when its judgment is manifestly unreasonable, or when there is insufficient evidence of record to support the court's findings." **Interest of D.W.**, 220 A.3d at 576 (internal brackets and citation omitted). Moreover, we note, "in a juvenile proceeding, the hearing judge sits as the finder of fact. The weight to be assigned the testimony of the witnesses is within the exclusive province of the fact finder." **Id**. (citation omitted). **See also Interest of C.B.**, 241 A.3d 677, 681 (Pa. Super. 2020) (stating that juvenile courts are afforded broad discretion to craft appropriate disposition).

Section 6352 of the Juvenile Act sets forth six dispositional options for juveniles who have been adjudicated delinquent, including placement on

- 16 -

supervision and commitment to a facility for delinquent children. **See** 42 Pa.C.S.A. § 6352(a). In choosing among these alternatives, a juvenile court must consider which dispositional alternative is:

> consistent with the protection of the public interest and best suited to the child's treatment, supervision, rehabilitation and welfare, which disposition shall, as appropriate to the individual circumstances of the child's case, provide balanced attention to the protection of the community, the imposition of accountability for offenses committed and the development of competencies to enable the child to become a responsible and productive member of the community[.]

*Id*. Further, when a disposition involves an out-of-home placement, the juvenile court must explain on the record why such commitment is "the least restrictive placement that is consistent with the protection of the public and best suited to the child's treatment, supervision, rehabilitation and welfare." 42 Pa.C.S.A. § 6352(c). **See also** 42 Pa.C.S.A. § 6301(b)(3)(i) (providing for disposition "separating the child from parents only when necessary for his welfare, safety or health or in the interests of public safety, by doing all of the following: (i) employing evidence-based practices whenever possible and, in the case of a delinquent child, by using the least restrictive intervention that is consistent with the protection of the community, the imposition of accountability for offenses committed and the rehabilitation, supervision and treatment needs of the child").

- 17 -

A.S. argues state commitment was not the least restrictive alternative because he had no contacts with law enforcement prior to this incident and resided in a stable household with his guardian. *See* A.S.'s Brief at 24. A.S. maintains the juvenile court should have placed him on probation. *See id*. at 25.

The juvenile court explained its reasoning for committing A.S. to state custody:

> [A]fter listening to the witnesses' testimony and viewing all the exhibits, including the surveillance videos, the [juvenile] court substantiated all the charges against [A.S.] Furthermore, taking the same evidence and the very violent nature of the delinquent acts perpetrated by [A.S.], the [juvenile] court made a finding [A.S.] was in need of treatment, supervision, or rehabilitation. The [juvenile] court held [A.S.] in custody and ordered a [BHE] and for probation to plan for placement. At the disposition date of November 9, 2022, the BHE recommended [A.S.] would have his needs and treatment met in a structured non-RTF (residential treatment facility) placement. Probation made referrals to multiple programs[] that denied [A.S.] placement based on the seriousness of his crimes [or his young age]. As a result, the only alternative was to commit [A.S.] to [s]tate placement. State placement at this time is the leas[t] restrictive disposition consistent with community protection. Given the [juvenile] court's substantial concern about a [fourteen]-year-old's ability to essentially "put a hit on someone and have someone shot in fifteen minutes," it was not possible for [A.S.'s] needs and the community's needs to be met with [A.S.] out of placement living at home with his guardian. While in state placement, [A.S.] will be able to develop short-term and long-term goals of changing and controlling his offender behavior[,] while also developing mutual respect for members within the community; work on adhering to the rules and accepting responsibility for his actions

to facilitate positive moral development and reduce risk of re-offending; and forge skills that will allow him to contribute positively to the well-being of the community by going to school, obtaining pro-social life and employment skills, and mental health counseling and therapy. In balancing all the considerations and evidence, the [juvenile] court concluded that adjudication of delinquency was appropriate, and that treatment, supervision, or rehabilitation via state placement was necessary.

Juvenile Court Opinion, 2/8/23, at 14-15 (citations to the record omitted).

Following our review, we discern no abuse of discretion by the juvenile court. The court heard testimony from A.S.'s guardian and from probation regarding its attempts to secure placement in a non-residential treatment program for A.S. *See* N.T., 11/9/22, at 6-8. It also considered the BHE, which concluded A.S. needed a structured, therapeutic placement. *See* Juvenile Court Opinion, 2/8/23, at 15. Contrary to A.S.'s assertions, given the seriousness of the offense and the recommendations of the BHE, his needs could not have been met simply by placing him on probation and allowing him to live at home with his guardian. *Contra* A.S.'s Brief at 25. Moreover, the record supports the Juvenile Court's finding that non-residential programs concluded they could not meet A.S.'s needs given the seriousness of the offense and his age and were unwilling to accept him. *See* N.T., 11/9/22, at 5-6. Thus, we conclude there is no manifest abuse of discretion in committing A.S. to state placement. *See R.D.*, 44 A.3d at 681.

For the reasons discussed above, we conclude A.S.'s issues merit no relief.  Accordingly, we affirm the dispositional order.

Order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/9/2024