2019 PA Super 295

| | | |
|---|---|---|
| IN THE INTEREST OF D.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: D.W. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 104 WDM 2019 |

Appeal from the Dispositional Order Entered July 29, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-JV-0001074-2019

BEFORE: BOWES, J., DUBOW, J., and MUSMANNO, J.

OPINION BY BOWES, J.: **FILED OCTOBER 1, 2019**

Pursuant to Pa.R.A.P. 1770, D.W. seeks expedited review of out-of-home placement in a juvenile delinquency matter.[1] We grant expedited review and affirm.[2]

On June 12, 2019, Pittsburgh Police Officer Lucas Burdette and two members of his tactical team were performing a proactive patrol in the Homewood section of Pittsburgh when they encountered then seventeen-year-old D.W. and four of his cohorts sitting in a parked automobile smoking

---

[1] Our review is limited to the propriety of out-of-home placement. We do not confront the merits of the adjudication of delinquency. D.W. challenges that decision in a separate appeal docketed at 1291 WDA 2019. **See** Pa.R.A.P. 1770(c)(2) ("A petition for review under subdivision (a) shall not challenge the underlying adjudication of delinquency.").

[2] D.W.'s Application for Relief Pursuant to Pa.R.A.P. 123 is denied as moot. The Application for Post-Submission Communication Pursuant to Pa.R.A.P. 2501(a) is granted insofar as we considered the submission in disposing of the juvenile's Rule 1770 petition for expedited review.

marijuana. D.W. sat in the driver's seat, and all five passengers were in conversation with a sixth person who was standing outside of the vehicle. The police officers wore plain clothes and operated an unmarked police vehicle. As the officers approached the group, the individual standing outside the car, leaned into the passenger-side window and alerted its occupants. Officer Burdette observed the five occupants respond to the alert by moving anxiously inside the vehicle. Based on his training and experience, Officer Burdette believed that the people in the car were attempting to conceal a weapon or contraband. He initiated an investigatory stop, detected "an overwhelming smell of marijuana emanating from the vehicle," and observed in plain view a backseat passenger holding a marijuana cigar. N.T., 7/9/19, at 12.

When Officer Burdette asked D.W. to step out of the car, the officer noticed a large unnatural bulge on the right side of D.W.'s waist. Concerned for his safety, Officer Burdette performed a **Terry**[3] pat-down frisk for weapons, which immediately revealed a handgun that was subsequently identified as an operable 9mm Norinco pistol. As a minor, D.W. was ineligible to carry a concealed firearm.

The police charged D.W. with firearms not to be carried without a license and possession of firearms by a minor. Pending the resolution of the juvenile adjudication proceedings, D.W. was detained in the Shuman Juvenile

---

[3] **Terry v. Ohio**, 392 U.S. 1 (1968).

Detention Center in Pittsburgh. Following hearings[4] on July 2 and 9, 2019, the juvenile court adjudicated D.W. delinquent for committing acts that would constitute the two violations of the Uniform Firearms Act if committed by an adult, and determined that he was "in need of further court supervision and/or treatment." N.T., 7/9/19, at 63, 81.

The juvenile court immediately proceeded to the dispositional phase. Anthony Gray, the juvenile probation officer, recommended enrolling D.W. in the Community Intensive Supervision Program ("CISP"), an in-home program administered by the Allegheny County Court. *Id*. at 64. Probation Officer Gray reasoned that CISP was appropriate because this incident was D.W.'s first contact with the delinquency proceedings, and he viewed the program as the least restrictive treatment at that stage. *Id*. at 65. The probation officer also noted that the juvenile was an expectant father, who will have obligations to his child. *Id*. at 68-69. While Probation Officer Gray was not certain whether D.W. received mental health treatment, Mary Zorn, who supervised the family's involvement with Children Youth and Family ("CYF"), subsequently clarified that the minor did, in fact, receive treatment, but did not complete it. *Id*. at 76.

_____

[4] In addition to the delinquency petition that is the genesis of this appeal, the adjudication hearing addressed a second delinquency petition involving a misdemeanor disorderly conduct charge filed at 879 of 2019. That charge stemmed from an altercation D.W. engaged in at his high school. While that incident resulted in a ten-day suspension from school, the Commonwealth ultimately withdrew the delinquency petition because the victim failed to appear. *See* N.T., 7/9/19, at 62.

Ms. Zorn also testified that the family received CYF services for approximately one and one-half years, including assistance with obtaining stable housing and transportation to school. *Id*. at 75, 77-78. The agency closed the case nearly one month before the juvenile delinquency hearing occurred, which was near the date that police arrested D.W. for the present gun charges. Ms. Zorn further explained that D.W. received mental health treatment until his June 12, 2019 arrest and commitment in the Shuman Center. *Id*. at 76.

D.W. endorsed juvenile probation's recommendation of in-home placement with CISP. *Id*. at 79-80. However, highlighting D.W.'s ability to receive needed educational and medical services in out-of-home placement and noting the contributions of K.J. ("Mother") to her son's pervasive truancy and her tolerance of the juvenile's decision to carry a handgun, the Commonwealth opposed returning the child to the family home. *Id*. at 70-71, 80. In general, the Commonwealth asserted, "It seems[D.W.] is a danger to himself as well as to others." *Id*. at 81.

The juvenile court deferred its final disposition as to placement. Instead, the court ordered D.W. to undergo mental health and substance abuse evaluations, comply with treatment recommendations, and submit to random drug screens. *Id*. Significantly, the court opined,

> Theres a number of things that are going on here in regard to [D.W.]. One, obviously he needs some [drug and alcohol] treatment in regard to marijuana. Obviously he needs a mental health treatment. He was in mental health. He was not discharged from mental health treatment. That alone, coupled

- 4 -

with a gun charge here today that he's been adjudicated in is a clear state[ment of the] risk in regard to anyone's community.

It is my understanding he has been shot, carrying a firearm. We're just lucky someone else hadn't been shot at this case as well.

I do not believe that he can receive what he needs at this particular time as well as keeping the community safe with him being in the community. Therefore, he is to be detained.

*Id*. at 81-82. The court recommitted D.W. to the Shuman Center pending its final disposition.

The juvenile court reconvened the disposition hearing on July 22, 2019. Probation Officer Gray testified that D.W was accepted by two residential placement facilities: Abraxas and the Summit Academy. N.T., 7/22/19, at 3. He added that, if out-of-home placement is required, D.W. preferred to be placed at Abraxas. *Id*. The probation officer also presented the results of the respective mental health and drug and alcohol evaluations that were performed while D.W. was detained at the Shuman Center. *Id*. at 4. As it relates to D.W.'s argument herein, the psychiatric evaluation noted that the proposed referral to CISP was "seem[ingly] a good option for this child. He can remain home as he remains on probation." Psychiatric Evaluation, 7/12/19, at 5. In addition, the drug and alcohol evaluation performed by Taji Walsh of the juvenile probation department revealed "a high probability of . . . substance use disorder," which involves "a progression in use, . . . loss of control, denial, preoccupation with use, and delusional thinking." Drug/Alcohol Assessment Results, 7/15/19, at 3. Ms. Walsh recommended

"[t]hat [D.W.] participate in an intensive outpatient program with regular drug screens. If placement is being sought, a program with a strong drug and alcohol component is recommended with aftercare treatment." *Id*. at 4.

While Probation Officer Gray did not expressly renew his initial recommendation for CISP during the July 22, 2019 hearing, D.W. reiterated his preference for in-home placement through that program. *Id*. at 7. At the close of the hearing, the juvenile court held the matter in order to review the newly-admitted reports. On July 29, 2019, the juvenile court entered the final dispositional order directing that "[D.W.] remain detained with permission to place in an appropriate placement." Juvenile Court Order, 7/29/19.

Thereafter, D.W. filed the instant petition for expedited review of out-of-home placement in a juvenile delinquency matter pursuant to Pa.R.A.P. 1770.[5] He asserts that the juvenile court abused its discretion by ordering out-of-home placement without complying with the technical requirements of the applicable rules of appellate and juvenile court procedure. Primarily, however, he complains that the juvenile court failed to fashion an individualized disposition or explain why it believed that out-of-home placement was the least restrictive alternative. He further assailed the placement as inconsistent with the considerations of public protection and his

_____

[5] While the juvenile court order is dated July 22, 2019, the court did not enter the order on the juvenile court docket until one week later, July 29, 2019. Pursuant to Pa.R.A.P. 1770(a), D.W. had ten days, or until August 8, 2019, to file a petition for expedited review of out-of-home placement. As D.W. filed the instant petition on August 5, 2019, he complied with the ten-day requirement.

treatment, supervision, rehabilitation, and welfare under the particular circumstances of his case. He requests that we vacate the dispositional order and direct the juvenile court to commit D.W. to CISP. To our disappointment, the Commonwealth failed to respond to the petition for expedited review, or to any of the juvenile's subsequent filings in this court.

This Court reviews a juvenile court's dispositional order directing out-of-home placement for an abuse of discretion. **Commonwealth v. K.M.-F**, 117 A.3d 346, 350 (Pa.Super. 2015) (quoting (**In the Interest of A.D.**, 771 A.2d 45, 53 (Pa.Super. 2001) (*en banc*)). It is well settled that, "[u]nder Pennsylvania law, an abuse of discretion occurs when the court has overridden or misapplied the law, when its judgment is manifestly unreasonable, or when there is insufficient evidence of record to support the court's findings." **J.M.R. v. J.M.**, 1 A.3d 902, 908 (Pa.Super. 2010) (citation omitted). The **K.M.-F**, court reiterated, "In a juvenile proceeding, the hearing judge sits as the finder of fact. The weight to be assigned the testimony of the witnesses is within the exclusive province of the fact finder." **Id**. at 351 (quoting **In the Interest of A.D.**, **supra** at 53).

The following precepts inform our review of D.W.'s petition for expedited review. Pa.R.A.P. 1770 establishes the mechanism for this Court to perform expedited review of a juvenile court's imposition of out-of-home placement. Rule 1770 provides as follows:

> **(a) General rule.** If a court under the Juvenile Act, 42 Pa.C.S. § 6301 et seq., enters an order after an adjudication of delinquency of a juvenile pursuant to Rules of Juvenile Court

Procedure 409(A)(2) and 515, which places the juvenile in an out of home overnight placement in any agency or institution that shall provide care, treatment, supervision or rehabilitation of the juvenile ("Out of Home Placement"), the juvenile may seek review of that order pursuant to a petition for review under Chapter 15 (judicial review of governmental determinations). The petition shall be filed within ten days of the said order.

**(b) Content.** A petition for review under subdivision (a) shall contain: (i) a specific description of any determinations made by the juvenile court; (ii) the matters complained of; (iii) a concise statement of the reasons why the juvenile court abused its discretion in ordering the Out of Home Placement; (iv) the proposed terms and conditions of an alternative disposition for the juvenile; and (v) a request that the official court reporter for the juvenile court transcribe the notes of testimony as required by subdivision (g) of this Rule. Any order(s) and opinion(s) relating to the Out of Home Placement and the transcript of the juvenile court's findings shall be attached as appendices. The petition shall be supported by a certificate of counsel to the effect that it is presented in good faith and not for delay.

**(c) Objection to specific agency or institution, or underlying adjudication of delinquency, is not permitted**.

(1) A petition for review under subdivision (a) shall not challenge the specific agency or specific institution that is the site of the Out of Home Placement and instead shall be limited to the Out of Home Placement itself.

(2) A petition for review under subdivision (a) shall not challenge the underlying adjudication of delinquency.

**(d) Answer.** Any answer shall be filed within ten days of service of the petition, and no other pleading is authorized. Rule 1517 (applicable rules of pleading) and Rule 1531 (intervention) through 1551 (scope of review) shall not be applicable to a petition for review filed under subdivision (a).

**(e) Service.** A copy of the petition for review and any answer thereto shall be served on the judge of the juvenile court and the official court reporter for the juvenile court. All parties in the juvenile court shall be served in accordance with Rule 121(b) (service of all papers required). The Attorney General of

Pennsylvania need not be served in accordance with Rule 1514(c) (service), unless the Attorney General is a party in the juvenile court.

**(f) Opinion of juvenile court.** Upon receipt of a copy of a petition for review under subdivision (a), if the judge who made the disposition of the Out of Home Placement did not state the reasons for such placement on the record at the time of disposition pursuant to Rule of Juvenile Court Procedure 512(D), the judge shall file of record a brief statement of the reasons for the determination or where in the record such reasons may be found, within five days of service of the petition for review.

**(g) Transcription of Notes of Testimony.** Upon receipt of a copy of a petition for review under subdivision (a), the court reporter shall transcribe the notes of testimony and deliver the transcript to the juvenile court within five business days. If the transcript is not prepared and delivered in a timely fashion, the juvenile court shall order the court reporter to transcribe the notes and deliver the notes to the juvenile court, and may impose sanctions for violation of such an order. If the juvenile is proceeding in forma pauperis, the juvenile shall not be charged for the cost of the transcript. Chapter 19 of the Rules of Appellate Procedure shall not otherwise apply to petitions for review filed under this Rule.

**(h) Non-waiver of objection to placement.** A failure to seek review under this rule of the Out of Home Placement shall not constitute a waiver of the juvenile's right to seek review of the placement in a notice of appeal filed by the juvenile from a disposition after an adjudication of delinquency.

Pa.R.A.P. 1770.

When a court commits a juvenile to out-of-home placement, the court

is required to state on the record in open court,

the name of the specific facility or type of facility to which the child will be committed and its findings and conclusions of law that form the basis of its decision consistent with subsection (a) and section 6301, including the reasons why commitment to that type or type of facility was determined to be the least restrictive placement

- 9 -

that is consistent with the protection of the public and best suited to the child's treatment, supervision, rehabilitation and welfare.

42 Pa.C.S. § 6352(c).

Similarly, Pennsylvania Rule of Juvenile Court Procedure 512(D)(4) enumerates the considerations that a juvenile court must address in its dispositional findings of fact and conclusions of law when the juvenile is removed from the home. In pertinent part, Rule 512 provides:

> The court shall enter its findings and conclusions of law into the record and enter an order pursuant to Rule 515. On the record in open court, the court shall state:
>
> . . . .
>
> (4) if the juvenile is removed from the home:
>
> > (a) the name or type of any agency or institution that shall provide care, treatment, supervision, or rehabilitation of the juvenile;
> >
> > (b) its findings and conclusions of law that formed the basis of its decision consistent with 42 Pa.C.S. §§ 6301 and 6352, including why the court found that the out-of–home placement ordered is the least restrictive type of placement that is consistent with the protection of the public and best suited to the juvenile's treatment, supervision, rehabilitation, and welfare; and
> >
> > (c) the provision of educational services for the juvenile pursuant to Rule 148[.]

Pa.R.J.C.P. 512(D).

Finally, where, as here, a juvenile files a petition with this Court for expedited review of out-of-home placement, and the juvenile court did not state the reasons for placement on the record at the time of disposition

pursuant to Rule 512(D), Pa.R.A.P. 1770 mandates that the court "file of record a brief statement of the reasons for the determination or where in the record such reasons may be found, within five days of service of the petition for review." Pa.R.A.P. 1770(f).

Herein, the juvenile court belatedly entered its findings of facts and conclusions of law on September 9, 2019.[6] The court noted its consideration of the circumstances surrounding the firearm offenses, D.W.'s education and mental health history, his substance abuse problem, his family's involvement with CYF, the danger to the public, and most importantly, his treatment, supervision, rehabilitation and welfare. **See** Findings of Fact and Legal Conclusions, 9/9/19, unnumbered at 8-9.

The juvenile court, in its role as the ultimate arbiter of fact, highlighted the history of D.W.'s persistent truancy during the 2018-2019 academic year when he missed approximately one-half of the 186 school days. N.T., 7/22/19, at 13. It also considered the fact that D.W.'s educational needs were not being satisfied at home and that the juvenile lacked accountability or adult supervision. These concerns are exemplified by Mother's validation of D.W.'s failure to return to school during Spring 2019, including missing his final exams, following a ten-day suspension from school for the disorderly conduct

---

[6] Having failed to file its statement of the reasons for its determination within the required period, on August 20, 2019, this Court entered a *per curiam* order directing the court to comply with Rule 1770(f) within seven days. The juvenile court entered its rationale twenty days later.

that was the genesis of the additional charges leveled at juvenile action number 879. The juvenile court noted Mother's concession during the juvenile proceeding that "A lot of him missing school was all my doing. Like I said, I didn't enroll him in school right away. I had a problem with sending him to that school." N.T., 7/22/19, at 14. In this vein, we also observe that, while Mother testified that D.W. had made the honor roll, his drug and alcohol evaluation revealed that, "Based on his report card, [his] performance in school is relatively low. . . . He has C's and D's in English, Geometry, Algebra, Physics, Chemistry." Drug/Alcohol Assessment Results, 7/15/19, at 3.

Likewise, the record contradicts Mother's sentiments that D.W.'s biological father was among the individuals who would be available to occasionally supervise the juvenile at home. Mother testified, "I have a 24-year-old daughter that's there, and [D.W.'s] father is also there sometimes." N.T., 7/2/19, at 8. However, the psychiatric report reveals that D.W. "does not have any contact with his biological father." Psychiatric Evaluation, 7/12/19, at 3.

In addition to the foregoing problems with Mother's credibility, the juvenile court was also concerned that Mother did not intercede in her son's decision to carry a firearm. In sum, the court determined that, after weighing the testimony presented by Mother, Probation Officer Gray, and the CYF case worker, and considering the psychiatric and substance abuse evaluations, in-home placement would not achieve the treatment and rehabilitative concerns

outlined in the Juvenile Act. **_See_** Findings of Fact and Legal Conclusions, 9/9/19, unnumbered at 9. For the following reasons, we agree.

None of the foregoing considerations that the juvenile court identified in support of out-of-home placement equates to an abuse of discretion, even when viewed in the light cast by the probation department's recommendation of in-home placement, and the psychiatrist's apparent endorsement of that position. Phrased differently, the record supports the court's determination that in-home placement is inappropriate under the particular circumstances of this case.

While Mother claimed to have familial support, and CYS confirmed that it offered the family in-home services for approximately eighteen months, to date, those resources proved ineffectual in meeting D.W.'s needs. D.W. was chronically truant from school and he regularly carried a firearm while under Mother's supervision. Mother's decisions to engineer her son's truancy and accept, if not tacitly endorse, his illegal possession of a handgun, erode the underpinnings of the probation officer's recommendation for in-home placement.

Similarly, the juvenile court consistently cited the fact that D.W. presented a danger to himself and a risk to the community. The juvenile's history with gun violence is ensconced in the record. He witnessed the shooting death of a close acquaintance, his stepfather died as a result of gun violence, and he was shot in the leg approximately seven months prior to the

instant arrest. D.W. suffers from post-traumatic stress disorder as a result of being shot.

D.W.'s several protestations do not provide a basis for relief. First, we reject his bare assertion that the juvenile court applied a blanket imposition of commitment simply because the juvenile was found in possession of the gun. Essentially, D.W. assails the juvenile court for what it views as the court's decision to commit him to out-of-home placement based solely on the court's "deterrent-based policy to order such commitment of **_any_** juvenile whose case involves a firearms possession charge." Post-Submission Communication Pursuant to Pa.R.A.P. 2501(a) at 10 (treble emphasis in original) (footnote omitted). In actuality, the juvenile court's principal concerns throughout these proceedings focused on D.W.'s individualized needs and the consequences of the juvenile's unsettling behavior on the community. The juvenile court's consideration of D.W.'s possession of a concealed weapon exceeded the simple fact that a minor possessed a gun. In reality, the juvenile court considered how gun violence affected D.W. in particular and determined that those specific considerations militated in favor of out-of-home placement.

Next, although the juvenile court neglected to explicitly delineate the reasons for finding that out-of-home commitment was the least restrictive placement alternative, the reasons are clear from the record. Stated plainly, the rehabilitative needs and program services are outlined in the psychiatric and substance abuse evaluations, and the juvenile court did not accept D.W.'s

position that he could satisfy those needs at home. Similarly, while we do not condone the fact that the juvenile court neglected to specifically state whether either Abraxas or the Summit Academy had a drug and alcohol treatment program that satisfied the requirements that Ms. Welsh outlined in her report, in the context of the juvenile court's palpable unease with D.W.'s all-consuming substance abuse, we interpret the court's directive of placement with "appropriate treatment" as satisfying the descriptions outlined in § 6352(c) and Pa.R.J.C.P. 512(D)(4)(a). *See* Juvenile Court Order, 7/29/19.

Furthermore, we are not persuaded by the juvenile's assertion that placement is unnecessary because D.W. can access services outside of a residential facility. As we outlined *supra*, the juvenile court emphasized D.W.'s need to complete mental health treatment and to initiate drug and alcohol treatment. N.T., 7/9/19, at 81-82. Although D.W. argues that he can participate in both of those programs through CISP without the necessity of residential placement, the fact that out-patient treatment is also available to him does not render the juvenile court's decision to commit the minor to a residential facility manifestly unreasonable, without support in the record, or a misapplication of the law. Thus, no relief is due.

Finally, to the extent that Probation Officer Gray sought leniency because it was D.W.'s first experience with the juvenile justice system, this rationale overlooks the fact that D.W. was arrested for disorderly conduct approximately one-month **before** he elected to smoke marijuana in a parked

car while carrying a concealed firearm. While the juvenile's prior conduct did not result in an adjudication of delinquency due to the victim's failure to attend the hearing, it undermines the probation officer's perspective that D.W. was new to delinquency proceedings and, more importantly, it further illustrates D.W.'s need for a level of supervision and rehabilitation that he cannot receive at home. Similarly, by engaging in this behavior one month before the instant arrest, D.W.'s actions refute his argument that the juvenile court abused its discretion in declining to adopt the probation officer's recommendation in favor of leniency. Although in-home placement is undoubtedly the least restrictive disposition, it is not an effective alternative. The record simply does not sustain D.W.'s contention that returning home will satisfy his need for treatment, supervision, and rehabilitation, or protect the public welfare. In this vein, we clarify that the psychiatrist did not explicitly endorse CISP **over** out-of-home placement. Instead, he merely noted that CISP, which had been identified as the recommended placement alternative, "seem[ed] to be a good option." Psychiatric Evaluation, 7/12/19, at 5.

Mindful of the juvenile court's role as fact finder and our deference for the court's conclusions that the record supports, we do not disturb the court's determination that D.W.'s rehabilitative and treatment needs would not be satisfied at home and that out-of-home placement was warranted pursuant to the Juvenile Act. Herein, the juvenile court considered the evidence presented during the two juvenile court hearings, evaluated the particular circumstances

of this case, and fashioned a disposition that suited D.W.'s rehabilitative needs under the Juvenile Act. We do not discern an abuse of discretion. ***See K.M.- F.***, ***supra*** at 350 (court did not abuse discretion when it considered information presented and fashioned a disposition that it believed suited the circumstances best). Accordingly, upon review of the petition for expedited review of out-of-home placement, we deny the juvenile's request for relief.

Petition for expedited review of out-of-home placement granted; relief is denied. Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/1/2019