J-M02001-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: C.S.G., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.S.G. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 5 WDM 2024 |

Appeal from the  December 21, 2023
In the Court of Common Pleas of Fayette County Criminal Division at
No(s):  CP-26-JV-0000212-2022

BEFORE:  DUBOW, J., McLAUGHLIN, J., and BECK, J.

MEMORANDUM BY DUBOW, J.:                     **FILED: April 15, 2024**

C.S.G., a minor ("Petitioner"), files a "Petition for Specialized Review (in the Nature of a Request to Review an Out of Home Placement Order, Pursuant to Pa.R.A.P. 1612)" ("Petition").  Petitioner argues that the juvenile court abused its discretion when it entered its January 4, 2024 order placing Petitioner in a secure rehabilitation facility.  Finding that the juvenile court did not abuse its discretion, we affirm the order.

The facts of this case are as follows.  Petitioner was originally charged as an adult with voluntary manslaughter, aggravated assault, and recklessly endangering another person,[1] stemming from the July 19, 2021 death of the eighteen-year-old victim.  The trial court granted Petitioner's request for decertification, transferring the matter to juvenile court.  On January 27,

---

[1] 18 Pa.C.S. §§ 2503(b), 2702(a)(1), 2705.

2023, the juvenile court determined that Petitioner committed the offenses, adjudicated him delinquent, and committed him to Abraxas Youth Center Secure ReSET Program ("Abraxas").[2]

At Petitioner's August 3, 2023 review hearing, reports from Abraxas and the Fayette County Juvenile Probation Department ("Juvenile Probation") indicated that Petitioner was excelling at Abraxas. The juvenile court ordered Petitioner to remain in his current placement until successful completion of his treatment goals and program requirements. Petitioner completed his required programming and a disposition review hearing was scheduled for December 21, 2023. Prior to the hearing, Juvenile Probation issued a report detailing Petitioner's success and recommending that Petitioner be released from Abraxas to the custody of his family while remaining under the supervision of Juvenile Probation and on home electronic monitoring. The report also noted that the family of the victim did not agree with the proposed discharge from custody. Additionally, Juvenile Probation prepared an alternative recommendation suggesting that the juvenile court transfer Petitioner to George Junior Republic, a less restrictive program closer Petitioner's residence.

At the December 21, 2023 review hearing, the lead case manager at Abraxas testified that Petitioner had done "phenomenal" at Abraxas,

---

[2] Prior to his placement at Abraxas, Petitioner spent eight months in the Fayette County jail, followed by ten months on electronic monitoring, without any behavioral issues reported. Petitioner maintained employment as a landscaper while on electronic monitoring.

successfully completing his clinical, behavioral, and educational programs. *See* N.T. Review Hearing, 12/21/23, at 5, 8. The lead case manager noted that Petitioner had a 4.0 grade point average and recommended that Petitioner be released into the care of his mother. *Id*. at 8. The victim's father testified, objecting to Petitioner's release to his family based upon the severity of the crime committed and the relatively brief length of time Petitioner had been in care. *Id*. at 10-11. Finally, Petitioner's probation officer detailed the alternative recommendations that she listed in her report, explaining that if the juvenile court decided to place Petitioner at George Junior Republic, he could have home visits, "would engage in individual and group counseling sessions, he would also participate in credit recovery … and eventually begin the step[-]down process." *Id*. at 12-19. Petitioner provided a statement to the court, expressing his remorse to the victim's family and stating that he thinks about the terrible result of his actions daily, making "every day … a challenge to [his] day[-]to[-]day life." *Id*. at 19-20.

Thereafter, Petitioner's counsel argued that Petitioner should be released to his mother's care because he completed all program requirements and no further rehabilitation goals could be achieved by keeping Petitioner in a secure facility. *Id*. at 20-22, 24—25. While the Commonwealth acknowledged Petitioner's progress, it argued that the seriousness of the crime warranted further supervision in a secure facility. *Id*. at 23-24.

At the conclusion of the December 21, 2023 review hearing, the juvenile court acknowledged Petitioner's success at Abraxas and the victim's family's

disagreement with the recommendation to release Petitioner from placement. It further stated that Juvenile Probation included the alternative placement option at the court's request, noting that Juvenile Probation did not agree that Petitioner continued to require a secure placement. *Id.* at 25, 26.

Although the juvenile court stated that Petitioner received "one of the best progress reports" the court had ever read, the court found that it was too soon to release Petitioner to his family because of the seriousness of the crime for which he had been adjudicated, noting that Petitioner would have likely served five to ten years of incarceration if he had been tried as an adult for the same crime. *Id*. at 25-32. When Petitioner's counsel argued that the juvenile court was improperly fashioning its decision to punish Petitioner, rather than to rehabilitate him, the juvenile court stated, "Yeah, I probably am. … I'm just not happy sending him home, just yet. … I think the George Junior alternative is the direction I wanna go in." *Id.* at 27.

Counsel for Petitioner further argued that there was no testimony that there is anything left for Petitioner to accomplish in an out-of-home placement and the juvenile court again stated that it was "look[ing] at the seriousness of [the offense]." *Id.* at 28. After Petitioner's counsel further pressed the court to state, on the record, what was left for Petitioner to accomplish prior to his release, the court responded, "I'd like to get some home visits done[.]" *Id.* at 30. The juvenile court thus ordered that Petitioner successfully complete a minimum of two home passes prior to discharge, with the passes to begin as soon as possible or as deemed appropriate by the George Junior

Republic staff and Juvenile Probation. Petitioner's next scheduled hearing date is on or after June 1, 2024.

Counsel for Petitioner timely filed the instant Petition on January 12, 2024, pursuant to Pa.R.A.P. 1612, which provides for expedited appellate review of out-of-home placement in juvenile delinquency matters. The Petition complies with the requirements set forth in Pa.R.A.P. 1612(b). By Order dated January 19, 2024, this Court directed the Commonwealth to file an answer on or before January 22, 2024. The Commonwealth failed to file a response. On February 16, 2024, we directed the juvenile court to provide this Court with the notes of testimony from the December 21, 2023 review hearing and file a brief statement of reasons for its out-of-home placement order within five days. This Court did not receive the juvenile court's statement of reasons or a transcript of the December 21, 2023 hearing until March 4, 2024. We now proceed to review the Petition on its merits.[3]

***

Pursuant to Pa.R.A.P. 1612(c), this Court "shall not consider any challenge to the juvenile court's selection of a specific agency or specific institution as the site of the out-of-home placement and instead may consider

_____

[3] During this Court's consideration of the instant Petition, the Supreme Court of Pennsylvania filed its decision in ***In the Interest of: N.E.M., Appeal of: N.E.M., a Child in Custody***, __ A.3d, __, 2024 WL 1202392 (Pa. Mar. 21, 2024). The Court held that a Pa.R.A.P. 1612 petition is not discretionary and operates to expedite the appeal process for juvenile out-of-home placement dispositions. ***Id.*** at *9.

only a challenge to the fact that the placement is out-of-home." Pa.R.A.P. 1612(c)(1). Further, this Court "shall not consider any challenge to the underlying adjudication of delinquency." Pa.R.A.P. 1612(c)(2). This Court's standard of review is whether the juvenile court abused its discretion in its dispositional order. *See In re A.D.*, 771 A.2d 45, 53 (Pa. Super. 2001) (*en banc*) ("Finding that the court properly considered the information presented to it and fashioned a disposition it believed best suited the circumstances involved, we perceive of no manifest abuse of discretion which would cause us to disturb its order."). The juvenile court is granted broad discretion in implementing its disposition. *In re Love*, 646 A.2d 1233, 1238 (Pa. Super. 1994).

> [T]he discretion of the Juvenile Court in implementing a disposition is broad, it is flexible and the Juvenile Court has considerable power to review and modify the commitment, taking into account the rehabilitative progress or lack of it of the juvenile. Without extreme specificity as to the error by the court in imposing the commitment, there can be no basis for setting aside the disposition.

*Id*. at 1238 n.5.

Pursuant to section 6352(a) of the Juvenile Act, the juvenile court's disposition must "be consistent with the protection of the public interest and best suited to the child's treatment, supervision, rehabilitation and welfare[.]" 42 Pa.C.S. § 6352(a). The court must "provide balanced attention to the protection of the community, the imposition of accountability for offenses

committed and the development of competencies to enable the child to become a responsible and productive member of the community." *Id.*

When committing a juvenile to out-of-home placement, the judge must state on the record in open court

> the reasons for its disposition . . . , together with the goals, terms and conditions of that disposition.  If the child is to be committed to out-of-home placement, the court shall also state the name of the specific facility or type of facility to which the child will be committed and its findings and conclusions of law that formed the basis of its decision consistent with subsection (a) and section 6301, including the reasons why commitment to that facility or type of facility was determined to be the least restrictive placement that is consistent with the protection of the public and best suited to the child's treatment, supervision, rehabilitation and welfare.

*Id.* § 6352(c).  Section 6301 further specifies that a child should be separated from his or her parents "only when necessary for his welfare, safety or health or in the interests of public safety[.]"  *Id.* § 6301(b)(3).  The Juvenile Act directs the juvenile court to employ the "least restrictive intervention that is consistent with the protection of the community, the imposition of accountability for offenses committed and the rehabilitation, supervision and treatment needs of the child."  *Id.* § 6301(b)(3)(i).

Petitioner alleges that the juvenile court misapplied the Juvenile Act. His argument is two-fold.  First, he asserts that the juvenile court did not present the reasons for transferring him from Abraxas to George Junior Republic on the record.  Petition for Specialized Review, 1/12/24, at 6 (unpaginated).  He also contends the juvenile court's disposition was not a

- 7 -

balanced consideration of community protection, accountability, and rehabilitation. ***See id***., at 5-6. Instead, he argues that the juvenile court improperly focused on punishment, when the record reflected that Petitioner no longer posed a threat to the community and had taken accountability for his actions.  In Petitioner's view, the juvenile court's decision was not the "least restrictive intervention" contemplated by the Juvenile Act and was, therefore, an abuse of discretion. ***Id***. at  6.

Upon our review of the notes of testimony, we agree with Petitioner that the juvenile court ordered an out-of-home placement without stating its reasons on the record at the time of the hearing, contrary to section 6352(c). At the hearing, the main reasons given by the court—the seriousness of the crime and the likely sentence Petitioner would have received if convicted as an adult—largely sounded in punishment. ***See*** N.T., 12/21/23, at 24-25. While the seriousness of the crime is relevant to the placement decision as it relates to the protection of the public, Petitioner correctly notes that the juvenile court is also to consider the juvenile's accountability and his treatment and rehabilitative needs when committing the juvenile to out-of-home placement, ***see*** 42 Pa.C.S. § 6301(b)(3)(i), which the court only briefly addressed in its desire to have Petitioner complete home visits. Further, Rule 512(D) of the Pennsylvania Rules of Juvenile Court Procedure requires that when a juvenile court determines a juvenile needs treatment, supervision, and rehabilitation, that it place its findings and conclusions of law on the record by

announcing them orally in court, followed by a written order. **See** Pa.R.J.C.P. 512(D), cmt.

The juvenile court's failure to state the requisite findings and reasoning on the record at the hearing, however, does not require automatic reversal. In **Commonwealth v. K.M.-F.**, 117 A.3d 346 (Pa. Super. 2015), this Court reviewed a petition for review filed pursuant to then-Pa.R.A.P. 1770.[4] The petitioner argued that the juvenile court erred because, in relevant part, it did not specifically state on the record why out-of-home placement was the least restrictive alternative, as required by the Juvenile Act. **K.M.-F**, 117 A.3d at 350. In response, this Court recognized the juvenile court's error, but found that because the placement programs were outlined by the juvenile probation officer at the hearing and the juvenile court subsequently stated its reasons for out-of-home placement, it did not require reversal. **Id**. at 351-52.

_____

[4] In 2015, Pa.R.A.P. 1770 provided for an aggrieved party to file a petition for review of an out-of-home placement in juvenile delinquency matters. "The substance of that rule is now found in Pa.R.A.P. 1612." **See** Pa.R.A.P. 1770, note.

Although in **N.E.M.** our Supreme Court cited **K.M.-F.** with disapproval because it treated petitions for specialized review under Rule 1770 as discretionary, **see Interest of N.E.M.**, 2024 WL 1202392, at *8, it did not disavow this Court's analysis of the merits of the case and its finding that the record supported the juvenile court's decision. Because Pa.R.A.P. 1612 incorporates the operative language from former Pa.R.A.P. 1770, we conclude that **K.M.-F.** retains its precedential authority in matters pertaining to Rule 1612 petitions. **Compare** Pa.R.A.P. 1612 (2024), **with** Pa.R.A.P. 1770 (2015).

Likewise, in **Interest of D.W.**, 220 A.3d 573 (Pa. Super. 2019),[5] the juvenile court ordered out-of-home placement for the petitioner but did not state its findings of fact and conclusions of law on the record at the hearing. After the petition for review was filed, this Court directed the juvenile court to enter a statement of reasons for its order, and the juvenile court complied. This Court relied on the juvenile court's written statement of reasons in determining that petitioner's claims were without merit. We also noted that although "the juvenile court neglected to explicitly delineate the reasons for finding that out-of-home commitment was the least restrictive placement alternative," the reasons were clear from the record. **Id**. at 580. Accordingly, we affirmed the juvenile court's order on the merits.

Finally, we observe that Pa.R.A.P. 1612(f) provides:

Upon receipt of a copy of a petition for specialized review under paragraph (a), **if the judge who made the disposition of the out-of-home placement did not state the reasons for such placement on the record at the time of disposition** pursuant to Pa.R.J.C.P. 512(D), the judge shall file of record a brief statement of the reasons for the determination or where in the record such reasons may be found, within five days of service of the petition for specialized review.

Pa.R.A.P. 1612(f) (emphasis added). The note to Rule 1612 adds that "paragraph (f) of this rule is applicable only in the exceptional circumstance

---

[5] The **N.E.M.** Court was similarly critical of **Interest of D.W.** in its decision. **See Interest of N.E.M.**, 2024 WL 1202392, at *8. For the reasons stated above, we conclude that like **K.M.-F.**, **D.W.** retains its precedential value on the merits of the decision. **See Int. of D.W.,** 220 A.3d at 579 n.6.

where the judge who made the disposition of an out-of-home placement fails to comply with Pa.R.J.C.P. 512(D)." ***Id***., note. The rule thus contemplates the precise circumstances present in this case, allowing the juvenile court to supplement its on-the-record reasoning with a written decision explaining the basis for its disposition.

Here, in its March 4, 2024 statement of reasons, the juvenile court elaborated on its decision to continue Petitioner's out-of-home placement at a new facility, focusing its reasoning on Petitioner's rehabilitative needs. The juvenile court explained that during his time at Abraxas, Petitioner had no overnight visits with his family nor did he visit his parents' home. Op., at 3. The juvenile court concluded that Petitioner had no significant, unstructured periods of time outside the Abraxas facility, and thus had not been subjected to the stresses that he would confront and with which he would need to cope when he returns to his home community. ***Id***. The juvenile court opined that a premature return could jeopardize Petitioner's continued, positive progress. ***Id***. at 3-4.

Additionally, a community service program for Petitioner had not yet been established. The court also wanted to afford Petitioner an opportunity to recover educational credits lost due to Petitioner's lengthy incarceration while the petition to decertify was pending, and the court cited George Junior Republic's excellent reputation for enabling students to recover lost educational credits. ***Id***. at 4.

Finally, the juvenile court explained that it considered Petitioner's success at Abraxas and authorized the issuance of home passes in an expedited timeframe. *Id*. at 4-5. The court concluded that, barring any unforeseen circumstances, Petitioner could be released to the care of his mother at the conclusion of the next review hearing. *Id*., at 5. Additionally, Juvenile Probation had provided an on-the-record explanation of the programing available to Petitioner at George Junior Republic. *See* N.T. Hr'g, 12/21/23, at 13.

Regarding Petitioner's objection to the juvenile court's reliance on the seriousness of the offense, we agree that the Juvenile Act does not specifically include this as a factor to consider when a juvenile court renders its decision concerning a juvenile's placement. The Juvenile Act does, however, require the juvenile court to consider the protection of the community as a factor in its decision ordering out-of-home placement. *See* 42 Pa.C.S. § 6352(a). Further, in its March 4, 2024 statement of reasons, the juvenile court addressed Petitioner's rehabilitative needs as outlined in 42 Pa.C.S. § 6352(c) and Pa.R.J.C.P. 512(D). The juvenile court found that Petitioner needed "to complete multiple successful home passes prior to any full community release, be afforded an opportunity to continue with his educational path, that he attempt credit recovery, as well as prepare his transitional plans for eventual release." Op., at 5.

In addition, as in **K.M.-F.**, Juvenile Probation provided an explanation of the therapeutic and rehabilitative services that will be provided to Petitioner at George Junior Republic. N.T., 12/21/23, at 14. In addition to the home passes and credit recovery program noted by the juvenile court, Petitioner will have continued therapy, which is particularly salient in light of Petitioner's acknowledgement of the devastating impact his crime has had on him.

Upon review of the Petition, the notes of testimony, and the juvenile court's March 4, 2024 statement of reasons, we find no manifest abuse of discretion in the juvenile court's placement directive. **See In re A.D.**, 771 A.2d at 53. The juvenile court is given broad discretion to fashion an out-of-home placement order and the record supports the juvenile court decision to continue Petitioner's out-of-home placement. The trial court considered Petitioner's rehabilitative, therapeutic, and supervision needs, his progress and accountability as well as the need for community protection and Petitioner's needs to successfully transition home. **See In re Love**, 646 at 1238. We decline to disturb the juvenile court's assessment of the further support Petitioner needs to complete that transition, and we therefore affirm its order.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


DATE: 04/15/2024