J-M02002-24
J-M02003-24

2024 PA Super 94

| | | |
|---|---|---|
| IN THE INTEREST OF: A.R.A., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| PETITION OF: A.R.A., A MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 15 EDM 2024 |

Appeal from the Order Entered March 1, 2024
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s): CP-39-JV-0000002-2024

| | | |
|---|---|---|
| IN THE INTEREST OF: A.R.A., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| PETITION OF: A.R.A., A MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 16 EDM 2024 |

Appeal from the Order Entered March 1, 2024
In the Court of Common Pleas of Lehigh County Juvenile Division at
No(s): CP-39-JV-0000073-2024

BEFORE:  DUBOW, J., McLAUGHLIN, J., and BECK, J.

OPINION BY BECK, J.:                                    **FILED MAY 10, 2024**

A.R.A., a sixteen-year-old minor ("Petitioner"), has filed two petitions for specialized review of out-of-home placement in juvenile delinquency matters pursuant to Pa.R.A.P. 1612 ("Petitions").[1]  Petitioner argues that the

---

[1] Petitioner filed separate petitions from two dispositional orders.  We consolidated the matters for appellate decision sua sponte.

Lehigh County Court of Common Pleas (the "juvenile court") abused its discretion when it entered its March 1, 2024 orders committing him to placement at a state secure facility. Finding that the juvenile court did not abuse its discretion, we affirm.

The record reflects that on February 29, 2024, Petitioner entered negotiated admissions in two cases. At case No. CP-39-JV-0000002-2024, Petitioner was adjudicated delinquent of criminal trespass (F3)[2] and theft by unlawful taking (F3)[3] following his admission that on or about December 29, 2023, he entered the victim's garage through an unlocked door and stole the victim's 2021 Vespa Primavera motorized scooter, which had the keys in the ignition.[4] The property was under renovation at the time of the theft, and Petitioner was a juvenile employee of a contracting company working near the unsecured location. On January 2, 2024, Petitioner was placed on house arrest with electronic monitoring pending an intake with the Office of Juvenile Probation ("Probation"). During his subsequent intake, Petitioner tested positive for marijuana, and it was determined that he was "still coming and going" despite the GPS monitoring. N.T., 2/29/2024, at 17-18. Probation allowed Petitioner to remain on GPS monitoring, with Probation to remove the

---

[2] 18 Pa.C.S. § 3503(1)(i).

[3] 18 Pa.C.S. § 3921(a).

[4] Based upon its agreement with Petitioner, the Commonwealth amended the charge from burglary to criminal trespass. N.T., 2/29/2024, at 8.

monitoring bracelet after thirty days. Petitioner removed the bracelet himself on the thirtieth day and brought the broken bracelet to Probation that same day.

At case No. CP-39-JV-0000073-2024, Petitioner was adjudicated delinquent of unauthorized use of a motor vehicle (M2)[5] following his admission that he was caught driving a 2018 Kia Soul that was stolen from a Wawa parking lot on February 14, 2024—less than two weeks after he completed home electronic monitoring.[6] The unattended vehicle was left running with the keys in the ignition. Petitioner was released to the custody of his mother.

The following day, Petitioner failed to appear for an adjudication hearing for the case involving the stolen Vespa, and the juvenile court issued a bench warrant. Petitioner was found later that morning at his home. He was transported to the Northampton County Detention Center on February 15, 2024. Following a detention hearing, Petitioner was transferred to the Abraxas Youth Center ("Abraxas"), a secure detention center, where he tested positive for marijuana, cocaine, and amphetamines. Petitioner's behavior at Abraxas was described by Probation as "good" and "cooperative." *Id.* at 19.

---

[5] 18 Pa.C.S. § 3928(a).

[6] Petitioner did not admit to stealing the Kia, claiming that a friend he met four days before had lent the car to him and that he did not know it was stolen. N.T., 2/29/2024, at 14-16. The juvenile court found Petitioner's version of the events to be entirely incredible. *Id.* at 15-17.

J-M02002-24
J-M02003-24

Petitioner filed the instant Petitions through counsel on March 12, 2024,[7] pursuant to Pa.R.A.P. 1612, which provides for expedited appellate review of the placement of a juvenile in an out-of-home overnight agency or institution after an adjudication of delinquency. The Petitions comply with the requirements set forth in Pa.R.A.P. 1612(b) (regarding the contents for a petition under Rule 1612(a)).

This Court ordered the Commonwealth to file answers to the petitions for specialized review. After a request for an extension was granted, the Commonwealth filed its answers on April 15, 2024.

We further directed the juvenile court to certify and transmit the notes of testimony for the joint adjudication/disposition hearing pursuant to Rule 1612(g) and to issue an opinion pursuant to Rule 1612(f). *See* Pa.R.A.P. 1612(g) (providing for the filing of the transcription of the notes of testimony for review of the out-of-home placement in juvenile delinquency within five days), 1612(f) ("if the judge who made the disposition of the out-of-home placement did not state the reasons for such placement on the record at the time of disposition…, the judge shall file of record a brief statement of the

_____

[7] Our Rules of Appellate Procedure require that a petition for specialized review be filed within ten days of the placement order. Pa.R.A.P. 1612(a). Although filed on March 12, 2024 from the March 1, 2024 disposition orders, the orders were not delivered to Petitioner's counsel until March 5, 2024, rendering them timely. *See* Pa.R.A.P. 108(a)(1) (providing that the day of entry of an order shall be the day the clerk of court mails or delivers copies of the order to the parties).

reasons for the determination or where in the record such reasons may be found"). The juvenile court responded by providing a statement to this Court on April 5, 2024, indicating that the reasons for placement are clearly stated in the court's dispositional order and fully discussed in the notes of testimony. Juvenile Court Statement, 3/14/2024; *see also In the Interest of N.E.M., Appeal of: N.E.M., a Child in Custody*, 311 A.3d 1088, 1100-01 (Pa. 2024) (stating that the Rule 1612(f) requirement is a fail-safe provision in case the juvenile court does not comply with Pa.R.J.C.P. 512(D)[8] to ensure that proper

---

[8] Rule 512(D) of the Rules of Juvenile Court Procedure provides:

> The court shall enter its findings and conclusions of law into the record and enter an order pursuant to Rule 515. On the record in open court, the court shall state:
>
> (1) its disposition;
>
> (2) the reasons for its disposition;
>
> (3) the terms, conditions, and limitations of the disposition; and
>
> (4) if the juvenile is removed from the home:
>
>> (a) the name or type of any agency or institution that shall provide care, treatment, supervision, or rehabilitation of the juvenile;
>>
>> (b) its findings and conclusions of law that formed the basis of its decision consistent with 42 Pa.C.S. §§ 6301 and 6352, including why the court found that the out-of-home placement ordered is the least restrictive type of placement that is consistent with the protection of the public and best suited to the juvenile's treatment, supervision, rehabilitation, and welfare; and

*(Footnote Continued Next Page)*

consideration has been given to the out-of-home placement and that the appellate court has an adequate record to review); Pa.R.A.P. 1612, Note (stating "paragraph (f) of this rule is applicable only in the exceptional circumstance where the judge who made the disposition of an out-of-home placement fails to comply with Pa.R.J.C.P. 512(D)"). With the required contents of the record before us, we now proceed to review the claims raised in the petitions.

Petitioner objects to the out-of-home placement decision on two bases. First, he asserts that that the juvenile court entered the disposition "with insufficient inquiry or factfinding" as to Petitioner's individualized needs. Petition at 7. In his view, the court abdicated its duty to "employ[] evidence-based practices whenever possible" by considering nothing beyond Petitioner's

---

> (c) the provision of educational services for the juvenile pursuant to Rule 148;
>
> (5) whether any evaluations, tests, counseling, or treatments are necessary;
>
> (6) any findings necessary to ensure the stability and appropriateness of the juvenile's education, and when appropriate, the court shall appoint an educational decision maker pursuant to Rule 147; and
>
> (7) any findings necessary to identify, monitor, and address the juvenile's needs concerning health care and disability, if any, and if parental consent cannot be obtained, authorize evaluations and treatment needed.

Pa.R.J.C.P. 512(D).

behavioral problems in reaching its determination and failing to consider less restrictive alternatives. *Id.* at 10-11 (quoting 42 Pa.C.S. § 6301(b)(3)).

Second, he contends that the juvenile court did not impose "the least restrictive intervention" and it was not tailored to meet Petitioner's treatment, supervision, rehabilitative needs, and general welfare. *Id.* at 7, 11. Petitioner argues that the juvenile court unduly focused its attention on the facts underlying the charges, as well as facts outside the scope of the admissions made—including facts related to withdrawn charges and his behavior while living in Nicaragua.[9] *Id.* at 11. Petitioner asserts that the juvenile court's disposition also failed to adequately account for Petitioner's "need for meaningful access to language services," or address how Petitioner will be able to participate in programming and services given that Petitioner is a native Spanish speaker and has limited English proficiency. *Id.* at 11-12.

According to Petitioner, because this was his first contact with the delinquency system, was adjudicated solely of nonviolent offenses, and posed no danger to the community, the juvenile court failed in its obligation to consider less restrictive alternatives. *Id.* at 12. Instead of sending him to an out-of-home placement, where language access services and his meaningful participation will be limited, Petitioner states that the juvenile court could have

___

[9] Petitioner is a native of Nicaragua. At the time of the adjudication hearing, he had been living in the United States for approximately a year. N.T., 2/29/2024, at 4.

allowed him to remain at home and utilize community resources to address his therapeutic/mental health, drug and alcohol, and educational needs with service providers who can communicate with him in Spanish. *Id.* at 13-14.

The Commonwealth counters that the record belies Petitioner's claim that the juvenile court failed to consider anything beyond the nature of the charges and Petitioner's past behavioral issues or that it failed to consider less restrictive alternatives. Commonwealth's Response at 14. It asserts that the court arrived at its decision, taking into consideration Petitioner's individual needs for treatment, supervision, accountability, and rehabilitation at length, emphasizing testimony from the hearing that supports its contention. *Id.* at 15.

The Commonwealth further argues that the juvenile court appropriately rejected community-based programming because of Petitioner's past inability to be supervised in the community—particularly as he committed a second offense (driving the stolen Kia) right after completing home electronic monitoring for his first offense (stealing the Vespa). *Id.* at 16, 17. Although acknowledging that Petitioner has limited English proficiency, the Commonwealth asserts that the state secure facility will allow him to use a translation service or device. *Id.* at 16. The Commonwealth also notes that significant efforts were made by Probation to try to locate a program that could accommodate his language barriers, but none were available, and the

court properly concluded that Petitioner's need for a higher level of treatment, supervision, and rehabilitation required a secure placement. ***Id.***

When reviewing a petition filed pursuant to Pa.R.A.P. 1612, this Court "shall not consider any challenge to the juvenile court's selection of a specific agency or specific institution as the site of the out-of-home placement and instead may consider only a challenge to the fact that the placement is out-of-home." Pa.R.A.P. 1612(c)(1). This Court also "shall not consider any challenge to the underlying adjudication of delinquency." Pa.R.A.P. 1612(c)(2). Our review is therefore limited to the juvenile court's decision to place the petitioner outside of his or her home. The juvenile court is granted broad discretion in determining the appropriate disposition for a petitioner and will not disturb its decision absent a manifest abuse of discretion. ***In Interest of J.G.***, 145 A.3d 1179, 1184 (Pa. Super. 2016); ***In re R.D.R.***, 876 A.2d 1009, 1013 (Pa. Super. 2005); Pa.R.A.P. 1612(b) and Note. "[T]he [j]uvenile [c]ourt has considerable power to review and modify the commitment, taking into account the rehabilitative progress or lack of it of the juvenile." ***In re Love***, 646 A.2d 1233, 1238 n.5 (Pa. Super. 1994).

Pursuant to section 6352(a) of the Juvenile Act (the "Act"), the juvenile court's disposition must "be consistent with the protection of the public interest and best suited to the child's treatment, supervision, rehabilitation and welfare[.]" 42 Pa.C.S. § 6352(a). The court must "provide balanced attention to the protection of the community, the imposition of accountability

for offenses committed and the development of competencies to enable the child to become a responsible and productive member of the community." ***Id.***

The Act further requires the court to state the reasons why commitment to an out-of-home facility is "the least restrictive placement that is consistent with the protection of the public and best suited to the child's treatment, supervision, rehabilitation and welfare." ***Id.*** § 6352(c). A child should be separated from his or her parents "only when necessary for his welfare, safety or health or in the interests of public safety[.]" ***Id.*** § 6301(b)(3). The Act directs the juvenile court to employ "evidence-based practices whenever possible … by using the least restrictive intervention that is consistent with the protection of the community, the imposition of accountability for offenses committed and the rehabilitation, supervision and treatment needs of the child." ***Id.*** § 6301(b)(3)(i).

The record reflects that when making its decision, the juvenile court stated that it was "left with very few options" and was "not willing to leave [Petitioner] out in the community under these circumstances where he's committing crimes, he has gang affiliations, he uses drugs, he's a danger to the community, perhaps even to himself[.]" N.T., 2/29/2024, at 28. The court expressed that allowing him to remain in the community was "not an acceptable situation. I don't know that his mother can keep control of him. Clearly he doesn't pay her any mind." ***Id.*** at 29; ***see also*** Juvenile Court Order, 3/1/2024, at 1 (finding that "[i]t is contrary to the welfare of

[Petitioner] to remain in the home of his mother" and that "reasonable efforts were made to prevent removal of [Petitioner] from the home"). It provided terms and conditions and required that any treatment be provided to Petitioner in Spanish. N.T., 2/29/2024, at 29-30; Juvenile Court Order, 3/1/2024, at 1.

The court noted that Petitioner had "committed two crimes in two months[]" and that he was "given a variety of breaks when [he] did such things as cutting [his] ankle bracelet off." N.T., 2/29/2024, at 30. The court observed that Petitioner was not in school or working (though recognizing that it was beyond Petitioner's control, as he lacked the necessary documentation), and was instead "out on the street," "not doing anything constructive," "[does not] follow any rules" at home," "[does not] abide by curfew," and "[does not] listen to [his] parents." *Id.* at 5, 30-31. The court stated, both at the conclusion of the hearing and in its statement, that it based its disposition on the testimony provided by Probation, which provided the necessary information concerning Petitioner's "history, needs, and concerns, as well as community safety issues" supporting its determination that Petitioner required out-of-home placement. *Id.* at 31; Juvenile Court Statement, 3/14/2024. *See also* Juvenile Court Order, 3/1/2024, at 2 (finding placement in a state secure facility to be "the least restrictive type of placement that is consistent with the protection of the public and best suited to [Petitioner']s treatment, supervision, rehabilitation and welfare, because he is unable to be maintained

in the community" and that its "disposition provides balanced attention to the protection of the community, the imposition of accountability for offenses committed and development of competencies to enable [Petitioner] to become a responsible and productive member of the community").

At the dispositional hearing, Petitioner's juvenile probation officer, Fabiola Gerhard ("Gerhard") testified to Petitioner's background. She explained when Petitioner was in Nicaragua, he spent most of his time on the streets, affiliated with a gang "known to carry weapons," and that he ran from his family's attempt to provide him with drug treatment. N.T., 2/29/2024, at 19, 20. Gerhard stated that Petitioner "has no relationship with Dad. He reports a better relationship with Mom, but he does not listen to her" or "respect her authority[.]" *Id.* at 20. Gerhard explained that Petitioner resides with his parents and another family member in a small apartment in Allentown, and that he comes and goes as he pleases, regularly staying out all night. *Id.* at 19-20.

Gerhard reported that he last completed the fourth grade and that he once again identifies as being part of a gang. *Id.* at 20. She opined that how Petitioner is choosing to spend his time "shows a significant risk, not just to himself but the community" and that she has "given him multiple opportunities to make better decisions and try to get to a point where [] Probation can supervise him, and he has not been open or receptive to that." *Id.* at 20-21. Furthermore, she testified that Petitioner "is not able to successfully follow

rules in the community[,]" has "[a] lot of issues with aggression, fighting[,]" and that his "[h]is lifestyle endorses criminal activity." *Id.* at 21. "He is not listening to any authority figures, and he has refused the drug help offered to him in the past by his family." *Id.* Gerhard added that "[Petitioner] scores as a high risk to reoffend on the [Youth Level of Services] risk assessment" and recommended that he be committed to a state secure facility. *Id.* at 21-22. She stated that because Petitioner is "a high risk," many programs will not accept him. *Id.* at 22. The juvenile court stated that its belief that the programs available at state secure facilities to be "very good," and Gerhard agreed that they have "[s]ome of the best." *Id.*

Language considerations were also discussed, and Gerhard explained that state secure facilities are "the only ones willing to accept [Petitioner] because of the language barrier[.]" *Id.* She testified that Petitioner understands English, and although he does not feel comfortable responding in English, she believed "[Petitioner] can understand a lot of what's going on." *Id.* at 22, 23. Gerhard acknowledged that Petitioner would not have a dedicated worker at the placement who speaks Spanish but would be able to use a "language system and/or device." *Id.* at 25-26.

Gerhard stated that Probation went to great lengths to try to locate a program that could provide programming and services to Petitioner in Spanish but that there were no such facilities available anywhere. *Id.* at 27-28. She testified that she reached out to multiple other counties—including those with

a higher incidence of native Spanish speaking youth and families—and learned the facilities that previously offered Spanish-language services have closed. *Id.* at 27. According to Gerhard, "it's not that our county doesn't have the ability to contract with said service providers. There are no said service providers at this time, and we saw that big change throughout the pandemic and just a lot of places closing." *Id.* at 28.

At the conclusion of the hearing, the juvenile court provided Petitioner the opportunity to speak. He denied that he misbehaved or that he was "on the streets spending time with gang members." *Id.* at 30-31. He stated that his mother would corroborate this. *Id.* at 31. When Petitioner's mother was given the opportunity to speak, however, she declined. *Id.*

Although the juvenile court lamented the unavailability of Spanish-language service providers in out-of-home placements, as stated above, the court found, based on the evidence presented, that Petitioner's need for treatment, supervision, rehabilitation, and accountability, as well as the protection of the community, all required out-of-home placement. *Id.* at 28; *see also* Juvenile Court Statement, 3/14/2024; Juvenile Court Order, 3/1/2024, at 1-2.

Based upon the record before us and our standard of review, we find no abuse of discretion in the juvenile court's disposition.[10] The record supports the juvenile court's finding that Probation had tried to supervise Petitioner in the community, but those efforts proved futile, with Petitioner continuing to come and go as he pleased, despite GPS monitoring, and being rearrested shortly after GPS monitoring ceased while still subject to supervision. Petitioner did not follow the rules at home, was frequently on the streets

---

[10] While the juvenile court relied heavily on Gerhard's testimony to supplement its findings in support of its disposition, this does not require reversal on appeal. *See Commonwealth v. K.M.-F.*, 117 A.3d 346, 351-52 (Pa. Super. 2015) (recognizing juvenile court's error in failing to state reasons on the record for out-of-home placement but finding that placement programs outlined by the probation officer provided the necessary information); *Interest of D.W.*, 220 A.3d 573, 580 (Pa. Super. 2019) (stating that although "the juvenile court neglected to explicitly delineate the reasons for finding that out-of-home commitment was the least restrictive placement alternative," the reasons were clear from the record). Both *K.M.-F.* and *D.W.* were decided under former Rule 1770, which provided for an aggrieved party to file a petition for review of an out-of-home placement in juvenile delinquency matters. "The substance of that rule is now found in Pa.R.A.P. 1612." *See* Pa.R.A.P. 1770, note.

We recognize that in *N.E.M.*, our Supreme Court cited *K.M.-F.* and *D.W.* with disapproval because they treated petitions for specialized review under Rule 1770 as discretionary. *See Interest of N.E.M.*, 311 A.3d at 1098. But it did not disavow this Court's analysis of the merits of the cases and the conclusions in both cases that the record supported the juvenile court's decisions. Because Pa.R.A.P. 1612 incorporates the operative language from former Pa.R.A.P. 1770, we conclude that *K.M.-F.* and *D.W.* retain their precedential authority in matters pertaining to Rule 1612 petitions. *Compare* Pa.R.A.P. 1612 (2024), *with* Pa.R.A.P. 1770 (2015). We do, however, admonish the juvenile court and remind it of its obligations under Rule of Juvenile Court Procedure 512(D). *See supra*, note 8.

during the day and out all night, and had gang affiliation and substance use concerns. Based upon Petitioner's actions and documented failure to be amendable to community supervision—even with home electronic monitoring—while living with his parents, the juvenile court's disposition placing Petitioner outside of the home was eminently reasonable.

The juvenile court further properly considered Petitioner's treatment, supervision, and rehabilitative needs, all of which can be met in an out-of-home placement with access to language translation and assistive devices, while holding him accountable for his actions and protecting the community from his conduct. As separation from Petitioner's parents is "necessary for his welfare, … health[, and] in the interests of public safety," and an out-of-home placement is the least restrictive option that would best serve his individualized needs and the need for public protection, we affirm the juvenile court's decisions. *See* 42 Pa.C.S. §§ 6301(b)(3), 6352(a), (c).

Orders affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/10/2024

- 16 -